[L. A. No. 6615. In Bank.—May 19, 1921.]

# H. I. HOPPIN, Appellant, v. FRED E. MUNSEY, Respondent.

[1] VENDOR AND VENDEE—DEFAULT OF VENDEE—WAIVER.—Under a contract for the sale and purchase of real property on installment payments, where time is made of the essence, the acceptance by the vendor of past due payments waives all past defaults in performance, but does not alter the terms of the contract with regard to the future or eliminate as to future occurrences provisions that time is of its essence, that if the vendee fails to comply with its terms the vendor shall be released from all obligation to convey, and that payments already made shall be forfeited by such failure; its only effect as to the future is to give the vendee a reasonable time after the payment within which to perform his part of the contract.

[2] ID.—REASONABLE TIME—QUESTION OF FACT.—The question as to what is a reasonable time for performance after waiver of default on the part of the vendee under a contract for the sale and purchase of real property on installment payments depends in each case upon its own particular circumstances and it is primarily a question of fact for the determination of the trial court.

[3] ID.—PRESUMPTION ON APPEAL.—In an action by the assignee of the vendee under a contract of purchase and sale of real property on installments, it must be presumed on appeal in support of the findings and judgment in favor of the defendant that the trial court decided that a reasonable time for performance by the vendee, after waiver of default by the vendor, had expired before the refusal of the vendor to accept an overdue partial payment tendered by the vendee, the vendee stating at the time that he was unable to pay the full amount then due.

[4] ID.—PERFORMANCE—LAPSE OF REASONABLE TIME FOR—RIGHTS OF VENDOR.—The vendor under a contract for the purchase and sale of real property on installments has the right, after he has waived default of the vendee in making payments and a reasonable time thereafter has elapsed for performance, to refuse further time, demand full performance, and decline to accept any partial payments and to assert his rights under the terms of the contract to declare it ended and the payments made forfeited to his use. His rights are the same as if the contract had originally

---

1. Vendor's acceptance of payment tendered after time specified as waiver of provision making time of essence of contract, note, 9 A L. R. 996.

fixed the period of expiration of such reasonable time as the time for full payment.

[5] ID.—TENDER OF PERFORMANCE—WAIVER.—In such a case a tender of a deed by the vendor, who is only contending that the contract cannot be enforced against him after such default by the vendee, is not necessary where the conduct or .declarations of the vendee are such as to show that it would be unavailing.

[6] ID.—REPEATED ACCEPTANCE OF OVERDUE PAYMENTS—WAIVER.—In such a case the contention that the repeated acceptance of overdue payments, however small, upon the contract price, not only operates as a waiver of all previous defaults, but also constitutes a waiver of the provisions of the contract declaring time of its essence and that the purchase money shall be forfeited upon a failure to pay at maturity, cannot be maintained.

[7] ID.—WAIVER OF DEFAULT—RESTORATION OF RIGHTS UNDER CONTRACT.—If, after such waiver as the law infers from acceptance of partial payments after maturity, the conduct of the vendor and vendee in subsequent dealings is such as to justify the inference that both parties understood that the conditions regarding forfeiture were to be treated as restored and were in force and that the vendee understood that he was then in default, the vendor may have the advantage of the forfeiture as completely as he may obtain it by a definite notice to the vendee, and when, in this situation, the vendor demands full payment and the vendee admits his utter inability to comply, the rule that a tender of the deed by the vendor need not be made when it would obviously be unavailing becomes applicable, and he may treat the failure and inability of the vendee as an abandonment of the contract, declare the money paid forfeited, and resell the property to another without liability to refund to the vendee the money paid. Especially is this true when the vendee has not been given possession and his conduct has shown a previous disposition to postpone performance indefinitely and has evidenced a design to keep up the relations solely for speculative purposes.

[8] ID.—EVIDENCE.—In such a case it is immaterial error, if error at all, to reject proof that on the day before a conversation between the vendor and vendee, in which the former refused to accept an overdue partial payment, he had given an option to another person to buy the property covered by the contract, where the option was without consideration and not binding on the vendor.

APPEAL from a judgment of the Superior Court of Los Angeles County. Fred H. Taft, Judge. Affirmed.

The facts are stated in the opinion of the court.

George W. McDill for Appellant.

Donald Barker and Wm. H. Neblett for Respondent.

SHAW, J.—This is an action by the assignee of a vendee to recover money paid by his assignor to the vendor upon a contract of sale of real estate, including certain taxes paid on the land. The defendant had judgment in the court below, from which the plaintiff appeals.

The contract of sale was made between Munsey, the defendant, and one F. W. Abbott, assignor of plaintiff as aforesaid. The complaint alleges that on September 14, 1914, Munsey and Abbott executed an agreement whereby Munsey agreed to sell to Abbott certain real estate for one thousand six hundred dollars, payable as follows: $250 in cash, then and there paid; $675 on or before September 10, 1915, and $675 on or before September 10, 1916, with interest on said installments from the date of the contract until paid at seven per cent per annum, payable quarterly; that he had from time to time made certain payments on the contract covering portions of the interest accruing thereon, amounting in all to $152.68—the last payment being five dollars on March 31, 1917—and had also paid certain taxes upon the land amounting to $45.85; that on August 20, 1917, Munsey, without having tendered to Abbott a deed of said property and without having demanded the payment of the remainder of the contract price from him, sold and conveyed the property to one Clara H. Mackey; that thereafter and before the commencement of this action Abbott tendered to Munsey the whole amount of principal and interest then due on said contract of sale and demanded of Munsey that he cause said property to be conveyed to Abbott; that Munsey refused the sum offered and refused to cause any conveyance of the property to be made to Abbott, and that after said demand and refusal Abbott assigned to the plaintiff all his rights and claims against Munsey. The prayer was for a judgment for the sum of $448.51.

The answer admitted, by not denying, the allegation that Munsey had not tendered a deed to Abbott and the allegations that Abbott had tendered to Munsey the principal and interest due on the contract and had demanded a

conveyance thereof from Munsey to him, which Munsey had refused to execute or cause to be executed. These allegations therefore stand as admitted for the purposes of the case.

The answer further alleged that the contract provided that time was of the essence thereof and that on the failure of Abbott to comply with its terms Munsey should be released from all obligation in law and equity to convey the property, and that Abbott should thereupon forfeit all right thereto and to all moneys theretofore paid thereunder; that prior to said conveyance by Munsey to Mackey as alleged in the complaint, Abbott was in default for failure to pay the principal and interest due on the contract price; that thereafter and before said conveyance to Mackey, Munsey had demanded of Abbott the payment of all of the remainder of the principal and interest of the contract price, but said Abbott failed to pay the same; that because of said default and failure he, Munsey, had declared a forfeiture of the rights of Abbott under the contract, and that defendant was thereby released from all obligation to convey to Abbott and was entitled to retain the money paid to him by Abbott.

The court found that Munsey conveyed the property to Mackey on August 21, 1917, but that before doing so, and after the maturity of the whole of the contract price, Munsey demanded from Abbott the payment of the principal thereof, and that he was at that time excused from tendering a deed of the property to Abbott by the fact that Abbott then and there declared that he was unable to pay the same and failed to comply with the demand for payment; that Abbott made no payment or offer of payment of the contract price or any part thereof between the time he declared himself unable to pay the price and the month of January, 1918; that the tender so made in 1918 was not made within a reasonable time after the acceptance of the last payment of five dollars on the overdue interest, which was on March 31, 1917; that the conduct of Abbott was such as to justify Munsey in acting on the belief that Abbott could not, and did not, intend to pay the price within a reasonable time after such waiver as resulted from the acceptance of said five dollars. It also found that the contract was in the form alleged in the answer and that Munsey had declared a

forfeiture of the rights of Abbott before making the conveyance to Mackey and after having demanded of Abbott the payment of the balance owing upon the contract price, and that Munsey was justified in refusing the tender made in January, 1918. It thereupon concluded that the plaintiff was not entitled to recover any part of the money paid on the contract by Abbott and rendered judgment accordingly.

The facts admitted by the pleadings are to be taken in connection with the evidence in the case, so far as they may assist in determining the weight thereof and the inferences to be drawn therefrom. Since the findings were in favor of the defendant, the evidence must be considered in the light most favorable to the defendant, and the testimony of the defendant is to be considered as the truth, so far as it is inconsistent with the evidence offered in behalf of the plaintiff.

The plaintiff contends that these findings are contrary to the evidence, and, second, that, even if correct, they do not support the judgment.

The following facts appear from the evidence: The first installment of the price was due on September 10, 1915. Up to that time Abbott had made six payments, amounting in the aggregate to $70.92, which was not sufficient to pay even the interest then accrued. Thereafter and prior to September 10, 1916, when the whole sum fell due, seven small sums were paid, amounting to $54.76. The default continued and on February 12, 1917, nothing more having been paid, Munsey gave to Abbott a notice in writing, signed by Munsey, as follows:

"In reply to your note of the 10th, just to hand, I wish to notify you that unless you pay up the interest amounting to $84.00 before the 10th of March, 1917, I will have to cancel deal with you on lot.

"I have waited long enough for payments past due, but will not wait longer on interest, which is a year now past due.

"Then when you catch up with interest I will expect some money paid on lot in a reasonable time.

"As I told you before I was willing to give you a chance as long as you kept interest paid up and am willing to still give you chance if you will keep interest paid, but now

you are so far behind on interest I must insist on it being paid as per above notice."

Thereafter Abbott paid ten dollars on March 5, 1917; twelve dollars on March 18, 1917, and five dollars on March 31, 1917. Nearly all of the payments had been made by checks sent to Munsey by mail. These payments lacked sixty dollars of paying the overdue interest. On July 31, 1917, Munsey received from Abbott through the mail a check for twenty-two dollars. No offer of payment had been made in the meantime. The same day Munsey called on Abbott and returned the check, saying that he could not accept such a small amount. Abbott said that he was unable to pay any more; that if Munsey would wait until the summer season was over he might possibly pay up the interest. Munsey asked for a payment on the principal, to which Abbott replied that he could not make a payment on the principal nor pay the interest due at that time. The question was then asked of Munsey, "What else did you say to him as to your reason for declining the amount?" to which the answer was: "In the first place that he had gone a year and some months behind in his interest; that I had given him previous notice four months previous, and I supposed that he had not been able to meet it, and was surprised to receive such sum, after four months had expired on this notice and that I needed the money and that I sold the lot." Abbott never was in possession of the property and he had no right of possession thereof under the contract. Abbott's testimony was to the effect that Munsey demanded full payment and that he, Abbott, said that he was unable to make payment, but that he was negotiating a loan and expected to pay up when he got the money. As the sale to Clara H. Mackey was for one thousand five hundred dollars, which was only about fifty dollars more than was due from Abbott, the court evidently doubted the good faith of Abbott's statement about the loan.

[1] It may be admitted that the acceptance by Munsey of the two small payments on March 18 and March 31, 1917, operated as a waiver of the demand contained in the notice of February 12th and of any right to declare a forfeiture as of the date of March 10th fixed in said demand. It waived all past defaults in performance, but it did not alter the terms of the contract with regard to the future

or eliminate as to future occurrences the three provisions that time was of its essence, that if Abbott failed to comply with its terms Munsey should be released from all obligation to convey, and that the payments already made should be forfeited by such failure. Its only effect as to the future was to give Abbott a reasonable time after the payment on March 31, 1917, within which to perform his part of the contract. Unquestionably it did not extend the time of payment further than that. It therefore follows that immediately upon the expiration of such reasonable time Munsey could have made tender of a deed and demanded full payment, and that upon the failure of Abbott to comply with the demand he could at once have begun an action against Abbott for specific performance, or to foreclose Abbott's rights, or for damages for breach of the contract. (*Glock* v. *Howard*, 123 Cal. 10, [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713]; *Keller* v. *Lewis*, 53 Cal. 118; *Fairchild* v. *Mullan*, 90 Cal. 194, [27 Pac. 201].)

[2] The question of what is a reasonable time depends in each case upon its own particular circumstances. It is primarily a question of fact for the determination of the trial court. [3] In support of the findings and judgment this court must assume that the trial court decided that such reasonable time had expired before the refusal of Munsey to accept the payment of twenty-two dollars offered on July 31, 1917. Abbott had shown no desire to meet his obligation promptly during the long period of indulgence that had already elapsed and Munsey was under no obligation to continue that indulgence or tax his own patience further. Less than one-sixth of the purchase price had been paid in cash at the time of the making of the contract and no further part of the price had been paid or offered. The payments made on interest had not been sufficient to discharge that already accrued. The whole contract price was long past due and all the money was due immediately upon the acceptance of the five dollars on March 31st. Abbott had never taken possession. No circumstances appear which appeal to a court of equity as necessary grounds for a considerable extension of time. We think the conclusion that the reasonable time for performance implied by the principles of equity had elapsed prior to July 31, 1917, was warranted by the circumstances of the case.

[4] The result is that on that day Munsey had the right to refuse further time, demand full performance then and there, and decline to accept any partial payments, and then to assert his right under the terms of the contract to declare it ended and the payments forfeited to his use. He had that right on September 10, 1916, the day fixed for the final payment by the terms of the contract, and when the reasonable time expired after the payment of March 31, 1917, his rights were the same as if the contract had originally fixed the period of expiration of such reasonable time as the time for full payment.

Furthermore, it may be noted that while the tender of a deed by Munsey, or the existence of a lawful excuse, would ordinarily be necessary as a condition precedent to any right of Munsey to proceed in the enforcement of the contract by suit, as for specific performance, or for damages, he is not here seeking such relief, but is only contending that the contract could not be enforced against him after such default by the vendee. We need not determine whether or not for the latter purpose a tender is necessary, for we think the facts disclosed by the evidence were sufficient to excuse such tender, even if it were otherwise required.

[5] A tender is not necessary where the conduct or declarations of the vendee are such as to show that it would be unavailing. "It is a maxim that the law does not require a man to do a vain and fruitless thing, so it has been held that a strict and formal tender is not necessary where it appears that if made it would have been vain and fruitless." (3 Elliott on Contracts, sec. 1972.) The want of a formal tender is excused when the person who should have made it is induced not to do so by any act of the other party "naturally tending to have that effect, done at or before the time at which such performance or offer may be made." (Civ. Code, sec. 1511, subd. 3.) On July 31, 1917, when Munsey declined a small payment on the interest and asked for a payment on the principal, Abbott informed him that he could not pay anything on the principal or interest at that time, but that if he would wait until the summer season was over he "might possibly" pay up the interest. This informed Munsey that Abbott was then unable to pay anything and that the most he then hoped for was that at the end of the summer season he might be able to pay a

very small portion of the price, all of which was at that moment long past due. In view of the past delays, Munsey could come to no other conclusion than that the tender of a deed at that time would be wholly vain and fruitless. This continued failure and these statements would naturally tend to induce him not to go through such an idle ceremony, but, on the contrary, to act in the case upon the theory that Abbott did not expect a tender and neither would nor could pay the money and accept the tender if it were made. Abbott's statements were an admission to that effect. The tender was excused and Munsey's rights are the same as if he had then made a formal tender and demand and had met with a failure and refusal.

Under these circumstances Munsey had the right to treat the money paid as forfeited to him, to consider his obligation under the contract terminated, and to sell and convey the property to another person. The case was precisely the same as that existing in *Skookum Oil Co.* v. *Thomas,* 162 Cal. 539, [123 Pac. 363], after the failure of the vendee there to pay the third installment of the price at the expiration of an extension of the time given therefor. The vendor thereupon elected to treat the contract as at an end and refused a subsequent offer of the balance of the price. The opinion, in referring to the contract, designates it as an option, but the contract is set forth and from its terms it clearly appears that after the first payment of ten thousand dollars was made, if not before, it became a contract of sale, so framed as to make time of its essence, and the context of the opinion shows that it was so considered. The deed was deposited in escrow, to be delivered upon full payment of the price. The contract was essentially the same in effect as that in the present case. The suit was to recover the price paid, upon the theory that the vendee had the right to rescind upon the refusal by the vendor to accept the tender of the balance due on the price. The court said that "under such a contract the refusal of the vendor to accept a tender made by a purchaser, in default, and to convey to the purchaser after such default, does not effect a rescission of the contract nor entitle the vendee to recover the money paid. Neither will equity relieve such purchaser who has made an unexcused default and has not fulfilled the conditions precedent to the vesting of his right

of action'' (page 545). So in *Oursler* v. *Thacher,* 152 Cal. 744, [93 Pac. 1009], the court quoted and approved the following passage from the opinion in *Glock* v. *Howard,* 123 Cal. 14, [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713] : '' 'While it is essentially true that in case of a rescission the vendee may demand that he be restored to his original condition, it does not follow that a vendor who refuses to convey after such breach by the vendee thereby rescinds. To the contrary, in refusing to convey, after the vendee's default he is not treating the contract as at an end, but is expressly standing upon it, and basing his rights upon its terms, covenants and conditions.' '' ''Also: 'But the vendor, in refusing to accept the tender and to repay the money, is neither violating his contract nor rescinding it, nor treating it as at an end. He is standing squarely upon its terms.' '' The meaning of this, of course, is that the vendor in such a case is standing upon the terms of the contract by appropriating the money paid to his own use and is without liability for its return. In *Glock* v. *Howard* it is said further: ''It would be to the last degree unjust and inequitable to allow a vendee, after his default under such a contract, to put the vendor in default by a mere tender. The practical effect of such a rule would be that a vendee without risk could speculate indefinitely in the land of the unfortunate vendor. The vendee would enter into a contract in which time would be declared of the essence, and stipulate under conditions precedent, as in this case, to make payment at a certain time. Failing to make payment he would three months, six months, one year, or, as in this case, over three years, after the date of the failure, make an offer to perform, and if the land had risen in value, according to the theory of respondents here, could compel performance; but in every case he could recover the moneys paid.'' In this case it is to be observed that Abbott did not make a tender of the purchase price until more than four months after the conveyance by Munsey to Mackey, of which sale he had knowledge. It follows from what has been said that the plaintiff had no right to recover any portion of the purchase money which Abbott had previously paid.

[6] The plaintiff seeks to avoid the effect of these principles by the claim that the repeated acceptance of payments, however small, upon the contract price, not only

operated as a waiver of all previous defaults, but also constituted a waiver of the provisions of the contract declaring time of its essence and that the purchase money should be forfeited upon a failure to pay at maturity. His position is that after such waiver the aforesaid provisions cannot be again asserted or enforced until the vendor shall have served the vendee with notice that at the expiration of a stated period, which must be a reasonable time, performance would again become due and would be demanded. In this he relies upon *Boone* v. *Templeman,* 158 Cal. 290, [139 Am. St. Rep. 126, 110 Pac. 947], and *Stevinson* v. *Joy,* 164 Cal. 279, [128 Pac. 751]. These cases do not hold that such stipulation for forfeiture may not be restored and enforced by the vendor in any other manner than by giving a definite and specific notice of the intent to do so. There is a declaration to that effect in *Monson* v. *Bragdon,* 159 Ill. 66, [42 N. E. 383], which is quoted in *Boone* v. *Templeman,* but the quotation is given in support of the statement that from the facts alleged in the complaint "a court *might infer* a waiver of the conditions regarding forfeiture and time," and that because of such possible inference, "they supported the general allegation of the complaint that Templeman had waived those conditions." The general allegation of waiver was attacked by a special demurrer for uncertainty. It is evidently this attack that was in mind when the court said that it was "supported" by the particular allegations showing such waiver. [7] On general principles there can be no doubt that if, after such waiver as the law infers from acceptance of partial payments after maturity, the conduct of the vendor and vendee in subsequent dealings is such as to justify the inference that both parties understood that the conditions regarding forfeiture were to be treated as restored and were in force and that the vendee understood that he was then in default, the vendor may have the advantage of the forfeiture as completely as he may obtain it by a definite notice to the vendee, and when, in this situation, the vendor demands full payment and the vendee admits his utter inability to comply, the rule that a tender of a deed by the vendor need not be made when it would obviously be unavailing becomes applicable, and he may treat the failure and inability of the vendee as an abandonment of the contract,

declare the money paid forfeited, and resell the property to another, without liability to refund to the vendee the money paid. Especially is this true when the vendee has not been given possession and his conduct has shown a previous disposition to postpone performance indefinitely and has evidenced a design to keep up the relations solely for speculative purposes, as is indicated by his conduct here. Neither of the cases cited is contrary to this conclusion. The Boone case was a suit by the vendee against the vendor for specific performance and not for a recovery of money paid, as upon a rescission. *Stevinson* v. *Joy* was a suit by the vendor to quiet title; there was a trial and the court found that the conditions as to forfeiture had been waived and that the vendee had offered to pay the whole sum then due on the price. The vendee was in possession and had made valuable improvements on the land. The question above stated was not involved in either case. In the Boone case the demurrer admitted all facts alleged, and in the Stevinson case the findings were against the vendor's contention. They present the opposite condition so far as inferences are concerned to that here presented. In this connection it may be again remarked that Abbott made no offer to pay any money until January 9, 1918, and that before he attempted to do this he had discovered that Munsey had already conveyed the property to Clara H. Mackey and undoubtedly knew that Munsey could not comply with the demand. Immediately upon his refusal to do so Abbott demanded a rescission of the contract and a return of the money paid. These facts are significant on the question of Abbott's good faith. In the present case the finding of the court is against the contention that at the time the forfeiture' was declared and the property reconveyed by the vendor there was any waiver in force which enlarged or continued the rights of the vendee, and, as we have seen, the evidence supports this finding.

The plaintiff also relies upon the decision of *Hayt* v. *Bentel*, 164 Cal. 680, [130 Pac. 432]. In that case there was an express allegation and finding that the vendor had waived the delay in making payment under the contract. What is said about the effect of acceptance of payments after maturity must be understood to refer to the fact that the court had made all inferences which might arise from that fact

in favor of the proposition that it constituted a waiver. These cases have no application where the finding is to the contrary and there is no uncontradicted proof of an express waiver. For these reasons the cases relied upon are inapplicable to the present case.

[8] It is claimed by the plaintiff that the court erred in refusing to allow proof that on July 30, 1917, the day before the conversation between Abbott and Munsey, Munsey had given an option to another person to buy the real property. We do not think this error, if it was one, was material. The contract was offered and it is set forth in the record. It does not appear to have been made upon any consideration and it expired on August 9th. There is no evidence that it was carried out, and unless there was consideration it was not binding. Apparently it did not in any respect bind Munsey to comply therewith or prejudice the rights of Abbott in the matter.

No other points are presented that deserve consideration. The judgment is affirmed.

Olney, J., Lennon, J., Sloane, J., Wilbur, J., Angellotti, C. J., and Lawlor, J., concurred.

Rehearing denied.

All the Justices concurred.