[Civ. No. 5105. Second Appellate District, Division One.—February 20, 1928.]

F. E. WOODRUFF, Respondent, v. B. A. GANN, Appellant.

James L. Giffin for Appellant.

E. E. Noon for Respondent.

WOOD (W. J.), J., *pro tem.*—Plaintiff seeks to quiet title to a certain tract of land by complaint in the usual form. One of several defendants named B. A. Gann, appellant herein, filed an answer and cross-complaint in which he set forth that plaintiff had agreed by contract in writing to sell to him the land in dispute and accept the purchase price in installments. He prayed for specific performance of the agreement to convey. The contract was executed on August 19, 1921. The total purchase price was stated as $5,656.45, of which $15 was paid in cash and the balance to be paid in monthly payments of $50 on the nineteenth day of each succeeding month, said payments to include interest. The contract contained this provision: "It is further agreed that time is of the essence of this contract and in event of a failure to comply with the terms and provisions hereof by the said Buyer, the Seller shall be released from all obligations in law or equity to convey said property, and at the option of said Seller the Buyer shall forfeit all rights thereto and to all payments theretofore paid hereunder and all interest of the Buyer in and to said lands by reason of this agreement shall thereupon cease and terminate and no tender or offer of performance by the Seller shall be necessary or prerequisite to his right to exercise any privilege or option hereby declared and that such right may be exercised upon default of the Buyer without such or any tender or offer of performance."

It is admitted that appellant was far in arrears in his payments on April 2, 1924. On that date he made a payment of $50 to plaintiff who then told him that the balance in arrears must be paid "in a day or two." On April 10, 1924, respondent served notice of forfeiture upon appellant, who now contends that his defaults were waived by the acceptance of the payment on April 2d. To properly pass upon this contention it is necessary to examine the evidence in some detail. During the entire time between August 19, 1921, the date of the contract, and April 10, 1924, the date

of the notice of forfeiture, appellant had not paid a sufficient amount to pay interest on the principal sum due. The few payments he had made had been at irregular intervals. On January 17, 1923, a payment of $20 was made and thereafter nothing was paid until January, 1924. Respondent plainly told appellant in a conversation held on January 1, 1924, that the payments must be made or the contract foreclosed. Concerning this conversation Mr. Woodruff testified: "I told him I was going away, taking a trip to Florida, and when I came back if this money was paid in, this five or six hundred, and these monthly payments had been made, it would be all right; if not I was going to foreclose the contract. Q. Did you tell him when you were coming back from Florida? A. Along about the first of March." The witness further testified: "I said, 'Now, Billy, if you will pay this five or six hundred dollars, and you will transfer this lease (appellant had leased the property to a third party), the payment of the lease to our bank, and this money is paid in here and we can credit you with $50 on each—the bank's note and my contract, why all right'; but I told him that we absolutely could not carry him any longer, that he had run—that he had promised us along in the spring when he borrowed the $1200 from the bank, he came in and asked for that money that he could pay up the Commercial Bank a note he owed them and he says, 'I can't take that lease out of the Commercial Bank until I pay them up, but if you will loan me $1200 I will get that lease and bring it down here and all the payments will be made here'; now that was along in the spring of 1923, and as I say, he never brought the lease in, never paid us a dollar." The cashier of the bank referred to as "plaintiff's bank," had admonished appellant on several occasions prior to January, 1924, to keep up his payments. Respondent went to Florida, returning about March 1st. On January 30, 1924, appellant paid on the contract the sum of $500, of which $200 was applied on interest and the balance was for taxes. On April 2, 1924, appellant paid the sum of $50 to apply on the contract, but at that time respondent notified him that he was in arrears something over $800, and that "the balance must be paid in a day or two." Mr. Woodruff testified: "I then told him I would not carry him longer, that he must pay up at once or I would

cancel his contract; he said how much would it require to bring his payments to date, up to date; I looked at his account and found it was over $800 in arrears; he said he wanted to give me the $100 check (one-half of which to be applied on this transaction); I again told him he would lose it unless the balance was paid within the next day or two; he said he would get busy and pay the balance right away; I told him that if he cared to have it I would pay him back all the money he had paid in on the contract that I had no desire to keep the money he had paid in, but if he wanted to keep the property he must make the delinquent payments in the next day or two.''

It is argued by appellant that in the case of a contract where time is made of the essence and a vendee is in default, the acceptance by the vendor of a payment with knowledge of the facts will operate as a waiver of the default and will suspend the right of forfeiture. This is undoubtedly the general rule. Appellant goes further and contends that before the vendor can revive the right of forfeiture a definite and specific notice of his intention so to do must be given to the vendee. He cites as authority the cases of *Boone* v. *Templeton,* 158 Cal. 290 [139 Am. St. Rep. 126, 110 Pac. 947], and *Stevinson* v. *Joy,* 164 Cal. 285 [128 Pac. 751], in both of which cases language giving some support to his contention can be found. Both of these cases were, however, referred to and construed in the later case of *Hoppin* v. *Munsey,* 185 Cal. 678 [198 Pac. 398], where at page 688 it is said: ''These cases do not hold that such stipulation for forfeiture may not be restored and enforced by the vendor in any other manner than by giving a definite and specific notice of the intent to do so.'' The rule is there laid down that it may be inferred from the conduct of the vendor and vendee in their dealings with each other that both parties understood that the conditions regarding forfeiture were to be treated as restored and that the vendee understood that he was in default. The same position was taken by the court in *Adams & McKee Land Co.* v. *Dugan,* 68 Cal. App. 226 [228 Pac. 681]. Although it seems from the two decisions last mentioned that it is not always necessary to make the notice of restoration ''definite and specific,'' it can be well said that in the case before us Mr. Woodruff did in fact give definite and specific notice to Mr.

Gann that the terms of the contract must be complied with. On January 1, 1924, Mr. Gann was told that he would have to pay $500 or $600 by the return of Mr. Woodruff on March 1st and also make the monthly payments, otherwise the contract would be foreclosed. The sum of $500 was in fact paid on January 30th, but the monthly payments were not made. The payment of April 2d must be considered in the light of the conversation held at that time as well as that of January 1st. At the time the payment was accepted on April 2d appellant was informed of the amount of his arrears and was told that he would lose the payment he was then making "unless the balance was paid within the next day or two," to which appellant replied that he would "pay the balance right away." ■ Mr. Woodruff went so far at that time as to offer to return to Mr. Gann all the money he had paid on the contract. He had the right to demand the payment of all sums in which the vendee was in arrears. (*Weatherbee* v. *Sinn*, 73 Cal. App. 98 [238 Pac. 134].) It cannot be contended that the conduct of Mr. Woodruff was not fair and equitable in the premises. ■ It is well settled that the question of what is a reasonable time which the vendor must allow for performance is one for the determination of the trial court. (*Hoppin* v. *Munsey*, *supra*; *Adams & McKee Land Co.* v. *Dugan*, *supra*; *Weatherbee* v. *Sinn*, *supra*.) ■ It cannot be said that the trial court was not justified in holding that the time allowed in the case before us was reasonable.

■ Appellant further contends that his prayer for specific performance should be granted since he made tender of the total amount due after April 10, 1924. Since notice of forfeiture was served on April 10th, after reasonable time for performance had been given, the appellant was not in position to make a tender. A vendee who is himself in default cannot by a mere tender put the vendor in default. See *Glock* v. *Howard*, 123 Cal. 1 [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713], where it is said: "It would be to the last degree unjust and inequitable to allow a vendee, after his default under such a contract, to put the vendor in default by a mere tender. The practical effect of such a rule would be that the vendee without reason could speculate indefinitely in the land of the unfortunate vendor." ■ Moreover, the record discloses that no tender was

made by appellant until May 3, 1924, more than thirty days after the conversation of April 2d. In view of all the circumstances, the trial court was justified in holding that a tender made more than thirty days after the demand of April 2d came too late.

Complaint is made that the trial court erred in sustaining a demurrer to the cross-complaint. The record before us does not show that a demurrer was filed by the party appealing. On the other hand, the record does show that findings were made by the trial court on the issues presented by the cross-complaint.

The judgment is affirmed.

Houser, Acting P. J., and York, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 19, 1928.

All the Justices concurred.