[Civ. No. 15365.   First Dist., Div. One.   May 19, 1953.]

O. E. ENFIELD, JR., Appellant, v. HUFFMAN MOTOR
COMPANY et al., Respondents.

Raymond A. Ferrario and Everett E. Power for Appellant.

John F. Hanson, Jr. for Respondents.

PETERS, P. J.—Plaintiff, O. E. Enfield, Jr., claiming to be the owner of an automobile in the possession of defendant, the Huffman Motor Company, brought this action for the recovery of the car or its value, and damages for its unlawful detention. The defendants brought in Bonnie Johnson as a party, and asserted a possessory lien in the company for $77.17 for work, labor and materials used or expended in the repair of the car, and further asserted that such repairs had been ordered by Enfield and Johnson. A counterclaim against Enfield for the value of the work, labor and materials, and for storage, was filed, as was also a cross-complaint against both Enfield and Johnson for the same items. The trial court determined that plaintiff should take nothing by his action, and that defendants should take nothing by their cross-complaint. Judgment was entered accordingly. Plaintiff appeals. Defendants have not appealed from the portion of the judgment adverse to them.

The record shows the following: In October of 1947, Bonnie Johnson owned the 1941 Dodge automobile here involved. She had the defendant company, the operator of a new car agency, a garage and repair service, install a new motor. Mrs. Johnson was not satisfied with the job and failed to pay a balance of some $60 to $70, which the defendant company claimed was still due. On January 1, 1948, Mrs. Johnson sold the car to her brother, the plaintiff, O. E. Enfield, Jr., for a total of $1,200, giving him a bill of sale therefor. When the car was sold to Enfield it had California license plates, but in May, 1948, Enfield had the car registered in his name in Colorado and secured and installed Colorado license plates.

Herbert Huffman, a partner in the defendant company, testified that in January of 1948 he went to Mrs. Johnson's home, where several families resided, to try to collect the claimed overdue bill. The door was answered by a man who claimed not to know Mrs. Johnson, stated that she had moved, and threatened to throw Huffman off the premises. Upon later meeting Enfield, Huffman stated that he was the man involved.

The Dodge automobile was again brought to defendant garage for repairs on July 14, 1948. There is a major dispute in the evidence as to who brought the car in and ordered

the repairs. Enfield testified that he did, and that he was accompanied by a Margaret Tungstel, a friend, who corroborated him. Two of the attendants at the garage testified that Bonnie Johnson, accompanied by a man, presumably Enfield, drove the car into the garage. Bonnie Johnson not only denied that she had brought the car in, but denied that she had been in or near Alameda County on that date. This is a key issue in the case. The trial court resolved it in favor of plaintiff, because it found that on the date* in question ''O. E. Enfield, Jr., brought a certain 1941 Dodge Sedan automobile to the auto repair shop operated by the defendants and that at said time and place O. E. Enfield, Jr. ordered certain work and labor to be performed . . . '' It must be accepted, therefore, as a fact that Enfield, the legal owner of the car, brought it to the garage and ordered the work done. Enfield testified that he told the garage attendant that the motor died, the car leaked oil, and the starter dragged, and that he wanted these things repaired, and the oil changed. Defendants' testimony was to the effect that the repairs ordered were more extensive than this and were as disclosed on the work order introduced into evidence. The court has resolved this conflict in favor of defendants.

Margaret Tungstel testified that she accompanied Enfield to the garage on July 14th, and that on July 15, 1948, at his request, she telephoned the garage and was told that the repairs were finished, that the car was ready for delivery, and that the charge was about $4.90. The service manager of defendant company remembered the telephone call, but testified that he told the caller that the car was not ready, that more extensive repairs were needed, and that the caller authorized these repairs to be made.

Later on the same day (July 15, 1948) Enfield arrived at the garage to pick up his car. He testified that he saw the Dodge in the garage, and that there was a bill under the windshield wiper; that the bill was for four dollars and ninety odd cents; that a mechanic told him that the car was ready; that he took the bill over to the cashier and was preparing to pay the bill when someone told him that Mr. Huffman wanted to see him; that he left the bill on the counter and went into Huffman's office; that Huffman told him that he would have to pay the $60 plus bill owed by his sister or

---

*The complaint alleges that the date was July 16, 1948; the answer and the findings fix it as July 13, 1948; the evidence shows that it was July 14, 1948.

he could not have the car. No demand of any kind was made for the current bill, nor did Huffman mention its amount.

The next day, on July 16, 1948, Enfield took a witness to the garage and again demanded his car, produced the bill of sale of the car and the Colorado registration showing that he was the owner, but again was refused the car unless he either produced Bonnie Johnson or her bill was paid. When Enfield attempted to remove some papers from his car he was ordered off the premises.

Huffman testified that he had been told that Bonnie Johnson had brought the car to the garage and that he had instructed the service department not to do any work on the car but to send her in to see him when she called; that the work card showed that Bonnie Johnson had ordered the repairs, although she had not signed the card; that he had been told by his employees that Bonnie Johnson had brought in the car; that when Enfield demanded the car he refused to deliver it to him on the ground that it was Bonnie Johnson's car; that although Enfield asserted ownership, he told him that Bonnie Johnson would have to pick up the car; that on the next day, when Enfield again demanded the car, he again refused to deliver to anyone but Bonnie Johnson, but Enfield denied any knowledge of her. Huffman admitted that no mention of the current bill was then made.

The record does not clearly disclose when the repairs were performed. Enfield and Miss Tungstel testified they had been told that they were completed on July 15, 1948. Huffman testified that on the 14th he had ordered that no work be done on the Dodge. The defendants simply testified, without fixing the date, that they were in fact completed as ordered at the reasonable cost of $77.17. It seems rather strange that Huffman would have ordered the repairs made after his dispute with Enfield on the 15th. Yet if Huffman is to be believed, that is exactly what he must have done. Huffman denied that there was or could have been a bill for $4.94, or any other sum, under the windshield wiper on July 15th for the reason that, under the shop's billing procedure, the bill is never placed on the car. Enfield admitted that he made no tender to Huffman of either the $4.94 or of any other amount.

The only evidence that a bill for $77.17 was ever submitted to Enfield appears in a letter sent to one of plaintiff's then counsel dated August 19, 1948, enclosing a bill for that amount "for services to date," and stating that the car would be released "on payment of this bill if Mr. Enfield is able to

make satisfactory proof that he is the owner of said vehicle.''
The only finding on this important question is that an allegation in the affirmative answer to the effect that on ''the 15th day of July, 1949, [obviously intended as 1948] defendant presented to O. E. Enfield, Jr. and Bonnie C. Johnson, . . . a demand for work and labor performed and materials furnished in the sum of $77.17'' was true. This finding is totally unsupported by the evidence. The earliest a demand was made, according to the record, was on August 19, 1948.

This date becomes important because defendants' defense to this action is that they acted reasonably in refusing the demands of Enfield for the car until they were satisfied that he and not Bonnie Johnson was the owner. Huffman testified that on the Monday or Tuesday of the next week following his original misunderstanding with Enfield (this would be July 19th or 20th), he had received a telegram from Bonnie Johnson from Fresno in response to one he had sent, telling him that she had sold the Dodge to plaintiff. This telegram was introduced by defendants and is dated July 14, 1948. Moreover, Huffman admitted that about this same time he had discovered, through inquiries of the police department of Alameda and the State Department of Motor Vehicles, that Enfield was in fact the owner of the car and registered as such in Colorado. Thus, not later than July 20th, and probably several days earlier if the date on the telegram is to be believed (it being defendants' evidence they are bound by it), Huffman knew the following facts: That the Dodge had Colorado license plates; that the car was registered to Enfield; that Enfield claimed to be the owner and produced the proper registration and a bill of sale from the former owner; that the city police and state motor vehicle department had informed him that Enfield was the owner; and that the former owner declared that the car belonged to Enfield. Yet a month later, on August 19th, when for the first time the defendants presented a bill for the claimed current repairs, defendants were refusing to release the car to Enfield, even if he paid the disputed bill, unless he could offer ''satisfactory proof that he is the owner of said vehicle.''

The record also shows that in October of 1948 the defendants were claiming that Enfield owed not only the $77.17 bill but $21 for storage. Counsel for Enfield offered to put up a $100 bond to cover all of the claimed indebtedness if Huffman would release the car, and then have the dispute settled in a court proceeding. Huffman refused.

Also in October of 1948 plaintiff filed a claim and delivery proceeding, together with a $2,500 bond, and gave the papers to a constable to secure the release of the car. The constable went to the garage and could not find the car, although he testified that he looked for it. Huffman testified that he told the constable that the Dodge was in storage without disclosing where it was. The constable, who certainly did not seem to have overexerted himself in the performance of his duties, apparently did not make a direct demand on Huffman for the car.

On this evidence the court found that Enfield was the owner of the car; that the allegations of the complaint relating to a claimed unlawful taking and conversion of the car by defendants were untrue; that at all relevant periods defendants possessed the car and had a possessory lien for repairs on it; that Enfield brought the car to the garage and ordered the repairs; that plaintiff has never paid, offered, or tendered any sum whatever for these repairs; that on July 15, 1949 (obviously 1948) defendants presented to Enfield and to Bonnie Johnson a bill for $77.17 for the repairs; that such sum is a reasonable amount for such repairs and remains unpaid. As already pointed out, the finding that a bill for $77.17 was presented to Enfield on July 15, 1948, is also unsupported, the evidence being that such bill was first presented on August 19, 1948.

It seems to have been the theory of the trial court that Enfield ordered the repairs; that Huffman properly refused to deliver the car until satisfied who was the real owner; that plaintiff made no tender of the amount due, and that defendants made a demand, but nothing was paid; that defendants have a possessory lien and may keep the car until the amount due is paid. If these basic conclusions were supported by the record, and that was all that appeared, then the conclusion that defendants have a possessory lien under section 425(a) of the Vehicle Code would be quite clear. The difficulty is that the trial court made no findings at all on a basic legal and factual question presented by the record, that is, as to whether defendants, by their actions, did or did not waive the necessity of a tender and their right to a lien. The whole case revolves around whether Huffman's absolute refusal to deliver the car to anyone but Bonnie Johnson waived not only the necessity of a tender by plaintiff, but waived the lien. Defendant company argues that its inquiry about the

ownership of the car was reasonable and that Huffman merely exercised ordinary prudence in requiring proof of ownership. But several difficulties are presented in trying to support these conclusions. When the car was first refused to Enfield, according to Huffman, the repairs had not yet been made because he had ordered that no work be done on the car, so that defendants then had no lien. But the real question is whether Huffman acted reasonably in refusing to deliver possession to Enfield not because of nonpayment of Enfield's bill, but because Huffman believed Bonnie Johnson owned the car. There can be no reasonable doubt that conduct designed to prevent delivery of an automobile to one not the owner is in protection of a lien, if one exists, and in protection of the owner's interest in the car. Such conduct is therefore reasonable. If Bonnie Johnson had brought in the car for repairs the conduct of Huffman might well have been reasonable. But the court has found that Enfield brought in the car. While Huffman testified that his employees told him that Bonnie Johnson had brought in the car, the statements of these employees, on conflicting evidence, have been found to be untrue. Huffman, not Enfield, is chargeable with the mistakes of these employees. Therefore, we start with the basic premise that Huffman knew or should have known that Enfield brought in the car. Huffman did know that the car formerly belonged to Bonnie Johnson and that she still owed him over $60 for prior repairs. But on July 15th and 16th and later he refused to deliver to Enfield, not because of failure to pay the present bill, in fact, according to Huffman, there was no bill then owing from Enfield, but because he wanted Enfield to produce Bonnie Johnson. Huffman knew then that the car had a Colorado registration, that it was registered to Enfield and that Enfield had a bill of sale signed by Bonnie Johnson. On the 19th or 20th of July, 1948, or earlier, he had a telegram from Bonnie Johnson stating that Enfield was the owner, and by those dates had been told by the police and motor vehicle departments that Enfield was the owner. But as late as August 19th, when the bill for $77.17 was first presented to Enfield, Huffman was still refusing to deliver the car to Enfield unless he offered satisfactory proof of ownership. Such conduct was certainly inconsistent with a claim of lien, and would support findings that defendant by its conduct had waived the necessity of a tender, and had also waived its claim of a lien.

■ The law applicable to the problems is reasonably clear. The right to a mechanic's lien, except where specifically controlled by statute, is governed by general common law principles applicable to all liens. (*Goodman* v. *Anglo-California Trust Co.*, 62 Cal.App. 702 [217 P. 1078].) ■ It is, of course, the general rule that the owner must make a demand for his property accompanied by a tender. (*Lindsay* v. *Kleiber Motor Truck Co.*, 110 Cal.App. 479 [294 P. 454].) ■ But it is equally clear that a tender may be excused by the conduct of the one claiming a possessory lien, such as where the claimant makes an absolute refusal to deliver the property. ■ The law does not require a useless act such as a tender where it obviously would be unavailing. (*Hoppin* v. *Munsey*, 185 Cal. 678 [198 P. 398] ; see, generally, Civil Code sections 1504, 1511, 1515, 2905, 2909, 2910.)

The next question is whether the conduct of the lien claimant may amount to not only a waiver of a tender, but a waiver of the lien itself. ■ It is well settled that conduct excusing a tender may also amount to a waiver of the lien. A case closely in point is *Hossom* v. *City of Long Beach*, 83 Cal.App.2d 745 [189 P.2d 787], where it was held that land was freed from a city tax lien when a tender was excused by the statements of the city official involved that any offer to pay the tax would be refused. At page 750 the court stated the applicable principles as follows: "A tender is not necessary where the declarations of the offeree are such as to indicate that the actual offer of money will be rejected; the law does not require a man to do a vain and fruitless thing; a strict and formal tender is not necessary where it appears that if it had been made it would have been refused. (*Hoppin* v. *Munsey*, 185 Cal. 678, 685 [198 P. 398].) Where the tender of payment of the balance due on a chattel mortgage has been unjustifiably refused, such refusal places the mortgagee in default, stops the accrual of interest, discharges the lien and revests title in the mortgagor with full right of possession. (*Walker* v. *Houston*, 215 Cal. 742, 745 [12 P.2d 952, 87 A.L.R. 937].) A tender need not be kept good when it appears that it will not be accepted." (See, also, *Lichty* v. *Whitney*, 80 Cal.App.2d 696 [182 P.2d 582].)

■ It is also quite clear that a mere excessive demand, in the absence of a tender of the proper amount, will not amount to a waiver. (*Goodman* v. *Anglo-California Trust Co.*, 62 Cal.App. 702 [217 P. 1078] ; *Kirkman Corp.* v. *Owens*,

62 Cal.App.2d 193 [144 P.2d 405].) But, in the instant case the refusal by Huffman to deliver the car was not based upon any excessive claim, but upon the claim of Enfield's non-ownership—a ground separate and independent of any question of a tender. From an early date it has been the law that "a lienholder who refuses upon proper demand to deliver property without setting up his lien thereon, or who bases his refusal upon a claim other than that of lien, waives his right to claim a lien after action commenced." (*Williams* v. *Ashe*, 111 Cal. 180, 184 [43 P. 595]; see, also, *Lehmann* v. *Schmidt*, 87 Cal. 15 [25 P. 161].) ▮ The statement that a refusal based upon any other claim than a lien waives the lien is probably too broad. The proper rule is that if the refusal is based on a ground inconsistent with the lien, such lien is waived. The correct rule was stated as follows in *Summerville* v. *Stockton Milling Co.*, 142 Cal. 529, 543 [76 P. 243]: "His possession was consistent with his own title, and was not inconsistent with his rights under the mortgage nor with the rights of other creditors subordinate to the mortgage. He did not repudiate his lien, but acted for the purpose of protecting his rights thereunder. The conversion referred to in section 2910 of the Civil Code must consist of some act inconsistent with the continuance of the lien and equivalent to a denial or repudiation of it. An act done to preserve and protect the property in order that it may remain subject to the lien, and which is equally beneficial to those having subordinate rights, and not in antagonism thereto, is not a wrongful conversion within the meaning of this section." (See, also, *Sutton* v. *Stephan*, 101 Cal. 545 at p. 548 [36 P. 106].)

Now how do these principles apply to the instant case? Some of the findings, already mentioned, are unsupported. There is no finding as to the exact date the repairs were completed so as to fix the date the lien arose. If the findings imply that the lien arose on July 15th, such finding is contrary to the evidence of Huffman that he had ordered no work to be performed on the car. The court simply finds no tender by plaintiff and a demand (erroneously fixing its date) by defendants. The court does not find whether Huffman's refusal to deliver on the ground of nonownership was or was not reasonable. If such finding in favor of defendants is implied, certainly a finding that a refusal to deliver the car as late as August 19, 1948, unless Enfield offered "satisfactory" proof of ownership would be unsupported, in view

of the defendants' own evidence, already set forth, as to what Huffman then knew about the ownership of the car. ██ The court made no finding on the important issues of whether the conduct of defendants waived the necessity of a tender, or waived their lien. The record shows that these were the vital issues in the case. On the retrial further inquiry may be made into these matters.

For these several reasons the judgment appealed from must be and is reversed.

Bray, J., and Wood (Fred B.), J., concurred.