STEWART, J.
11The plaintiff, Bell Foundry Company (hereafter “Bell”), filed a petition seeking payment from the defendant, Lonny McCurry’s Four Wheel Drive, Inc., t/a Skyjacker Suspensions (hereafter “Skyjacker”), of two outstanding invoices on an open account in the amount of $23,076.72 for orders of steering knuckles, plus payment of reasonable attorney fees recoverable under La. R.S. 9:2781. Skyjacker filed a reconventional demand for damages alleging that Bell wrongfully converted its property, namely, the patterns and tooling used to make the steering knuckles. The trial court rendered a judgment in favor of Bell ordering Skyjacker to pay the amount due on the invoices. A separate judgment awarded Bell attorney fees in the amount of $9,104. After its motion for a new trial was denied, Skyjacker appealed. Bell answered to seek additional attorney fees for appellate work. Finding no error in the trial court’s judgment, we affirm and award Bell an additional $1,000 in attorney fees.
FACTS
Skyjacker is a Louisiana business that sells suspension kits, which are used to enhance four-wheel drive vehicles. Bell, a California foundry business, began working with Skyjacker in 2002 to make the steering knuckles included in the suspension kits. Steering knuckles are described in the record as being located behind the tire and used to tie the upper and lower arm of a vehicle together. During their relationship, Bell manufactured seven models of steering knuckles for Skyjacker. The steering knuckles were made to specification using patterns, also referred to as match plates, and related tooling, which *532 Skyjacker refers to as drill jigs. 12The match plates and tooling will be referred to together as the “patterns” in this opinion. Skyjacker paid Bell to make the patterns, which remained in Bell’s possession for the purpose of making the steering knuckles.
By email on March 6, 2007, Skyjacker informed Bell that it was changing vendors for the steering knuckles and requested return of its patterns. Bell initially indicated that it would take a few days to ready the patterns for shipment. Then, in an email on April 4, 2007, Bell informed Skyjacker that its company policy prohibited release of the patterns until payment of final invoices. Skyjacker replied that its policy was not to pay final invoices until it received its patterns. In another email on April 5, 2007, Bell explained that the patterns were ready to ship on March 14, 2007, but Skyjacker had two past due invoices for steering knuckles that were delivered in February 2007. Bell informed Skyjacker that it had lien rights in accordance with Cal. Civ.Code § 3051, which allowed it to hold the patterns until the invoices are paid. The two outstanding invoices are No. 20506 dated 02/09/07 in the amount of $14,290.35 and No. 20536 dated 02/13/07 in the amount of $8,786.37. Skyjacker had received both invoices before terminating its relationship with Bell and requesting return of the patterns.
Seeking payment of $23,076.72 due on the open account plus reasonable attorney fees as permitted by La. R.S. 9:2781, Bell sued Skyjacker on August 20, 2007. Skyjacker asserted “payment and offset” as affirmative defenses in its answer. Claiming that Bell wrongfully converted its “tooling, including but not limited to Match Plates and Drill Jigs,” | sSkyjacker also filed a reconventional demand for damages. Skyjacker prayed for a judgment ordering Bell either to return its patterns or pay the value thereof.
Both parties filed motions for summary judgment, which were denied. A bench trial resulted in a judgment on August 11, 2010, in favor of Bell. The judgment stated, “This Court does not find that Bell Foundry improperly held the subject property pending payment of the invoices in question. Bell Foundry was / is within its rights to hold the patterns pending payment. The sale of same is not required.” Following the submission of an affidavit of attorney fees by counsel for Bell, the trial court rendered a separate judgment awarding $9,104 in attorney fees.
Asserting that the judgment was silent as to its reconventional demand for Bell to return its property or pay its value, Skyjacker filed a motion for a new trial. The trial court denied Skyjacker’s motion. Skyjacker then filed a suspensive appeal. Bell answered the appeal to seek additional attorney fees.
DISCUSSION
Skyjacker’s appeal includes eight assignments of error regarding the trial court’s interpretation and application of California lien law, its rejection of the affirmative defenses of compensation and setoff, its denial of the motion for a new trial, and its award of attorney fees. None have merit.

14Application and Interpretation of the California Lien Law

Skyjacker asserts that the trial court erred in its interpretation and application of the California lien law in various respects. The relevant provision is Cal. Civ.Code § 3051, which states in pertinent part:
Every person who, while lawfully in possession of an article of personal property, renders any service to the owner thereof, by labor or skill, employed for *533 the protection, improvement, safekeeping, or carriage thereof, has a special hen thereon, dependent on possession, for the compensation, if any, which is due to him from the owner for such service; a person who makes, alters, or repairs any article of personal property, at the request of the owner, or legal possessor of the property, has a hen on the same for his reasonable charges for the balance due for such work done and materials furnished, and may retain possession of the same until the charges are paid; and foundry proprietors and persons conducting a foundry business, have a lien, dependent on possession, upon all patterns in their hands belonging to a customer, for the balance due them from such customers for foundry work.... [Emphasis added.]
Skyjacker contends that under this provision a workman’s labor in servicing a thing gives rise to a hen on the thing for the value of his labor. Skyjacker explains that Bell was paid for its work in making in the patterns; therefore, it has no hen on the patterns under § 3051 for the balance due on the invoices for the steering knuckles. Skyjacker cites a number of cases, including Golden State Portland Cement Co. v. Ward Motor Car Co., 185 Cal. 402, 197 P. 56 (Cal.1921), for the proposition that a hen under § 3051 “extends only to the article upon which the work is done or for which the materials are furnished, and does not extend to anything else.” However, the Golden State language is referring to that part of § 3051 providing a hen in favor of the person who “makes, alters, or repairs any article of personal property” for the balance due for such work. None of the cases cited by | .¡Skyjacker involve that part of § 3051 providing a possessory hen for foundries.
Skyjacker’s contention ignores the clear and specific language of § 3051 providing a foundry business with a hen on the customer’s patterns in its possession for the balance due for foundry work. Bell, a foundry business, used Skyjacker’s patterns to make the steering knuckles ordered by Skyjacker. While the steering knuckles were shipped to Skyjacker in Louisiana, the patterns remained with Bell in California to be used to fulfill future orders. Under § 3051, Bell’s possession of the patterns secures Skyjacker’s payment for its foundry work in making the steering knuckles. The fact the Skyjacker had paid Bell years before for making the patterns is of no relevance to its hen rights on the patterns for payment for its foundry work in making the steering knuckles.
Next, Skyjacker contends that Bell has no hen under § 3051 because it did not follow California law in enforcing the hen. Skyjacker also asserts that a suit on an open account is not a prescribed means of enforcing the lien. Bell cites California jurisprudence for the principle that a statutory hen may be enforced only as prescribed by law. White v. White, 11 Cal.App.2d 570, 54 P.2d 482 (Cal.App.3d Dist. 1936), hearing denied, 11 Cal.App.2d 570, 56 P.2d 202 (Cal.1936). Skyjacker complains that Bell has failed to comply with Cal. Civ.Code § 3052 to enforce its hen. Section 3052 provides that if the § 3051 lienholder “is not paid the amount due, and for which such hen is given, within 10 days after the same shall have become |fidue, then such henholder may proceed to sell such property....” [Emphasis added.]
Bell filed suit under La. R.S. 9:2781, which states in relevant part:
A. When any person fails to pay an open account within thirty days after the claimant sends written demand therefor correctly setting forth the amount owed, that person shall be liable to the claimant for reasonable attorney fees for the prosecution and collection of such claim *534 when judgment on the claim is rendered in favor of the claimant.
Bell sued to collect the balance due on an open account. It did not file suit in Louisiana to enforce its lien. In fact, its petition makes no reference to any lien rights. Because this is not a suit to enforce a lien, we find no merit to Skyjacker’s argument.
Citing Cal. Civ.Code § 2882, which provides that “[n]o lien arises by mere operation of law until the time at which the act to be secured thereby ought to be performed,” Skyjacker argues that no lien exists because Bell converted its property before any lien could have arisen. To support its argument, Skyjacker asserts that it terminated its relationship with Bell on March 6, 2007, before payment was due on either invoice.
Contrary to Skyjacker’s argument, payment was due on the invoices when it ended its relationship with Skyjacker on March 6, 2007. At that time, Skyjacker had already received delivery of the steering knuckles and the two invoices. Both invoices had terms of “Net 30.” Mickey Smith, who was Skyjacker’s purchasing coordinator in 2007, testified that “Net 30” meant Skyjacker had 30 days to pay before Bell “would be wondering where there [sic] payment was.” Invoice No. 20506, which was received by Skyjacker on February 14, 2007, had a handwritten note stating, “Do not |7pay per M.S. Doesn’t want to pay until last minute b/c they have something of ours & he won’t pay until he gets it back!” Lonnie McCurry, Skyjacker’s president, testified that he made the decision not to pay Bell. Even though he had the money set aside and knew he had 30-day billing, he refused to pay until he got his patterns back. The testimony and evidence show that Skyjacker knew payment was due upon receipt of the invoices and would be overdue after 30 days. However, Skyjacker’s maneuver to get its patterns before paying the invoices was thwarted by Bell’s hen rights under California law. Because Bell had possession of the patterns, it had a lien for payment of the balance due by Skyjacker notwithstanding Skyjacker’s request for return of the patterns on March 6, 2007, before the 30-day payment period had run. Bell’s failure to return the patterns upon request did not result in a wrongful conversion of Skyjacker’s property.
Skyjacker also argues that Bell has no lien because it did not assert its lien when Skyjacker first requested return of its patterns on March 6, 2007, and because Bell referred to company policy, rather than the lien, in the email on April 4, 2007, in explaining why it had not returned the patterns. In support of this argument, Skyjacker cites Enfield v. Huffman Motor Co., 117 Cal.App.2d 800, 257 P.2d 458 (Cal.App. 1st Dist.1953), for the proposition that a lienholder, who refuses to deliver property upon proper demand without setting up his lien or who bases his refusal to deliver the property on a claim other than a lien, waives his right to claim a lien after the action is commenced.
| RSkyjacker’s argument overlooks the explanation that the refusal to deliver the property must be based on a “ground inconsistent with the lien” to amount to a waiver of the lien. Id. Skyjacker also ignores the rule that the demand for the property must be accompanied by a tender. Id. As explained in Enfield, “a tender may be excused by the conduct of the one claiming a possessory lien, such as where the claimant makes an absolute refusal to deliver the property.” Id. Here, Skyjacker’s demand for return of the patterns was not accompanied by a tender of the amount owed on the invoices. Additionally, Bell has not made an absolute refusal to deliver Skyjacker’s patterns. Rather, Bell indicated from the start that *535 it was prepared to return the patterns and only failed to do so due to Skyjacker’s refusal to pay the outstanding invoices. Bell’s company policy of not releasing the patterns until payment of final invoices is in line with its lien rights under California law. The record does not show that Bell has acted in any way to waive its lien rights.
We find no error by the trial court in its interpretation and application of the clear language of Cal. Civ.Code § 3051 to permit Bell to retain possession of the patterns pending Skyjacker’s payment of the two outstanding invoices.

Louisiana Lien Law

Skyjacker next argues that Bell has no lien under Louisiana law. We note that Bell has not asserted lien rights under Louisiana law. And as previously stated, Bell’s suit is not one to enforce its lien. This assignment of error merits no further discussion.
| aAffirmative Defense of Compensation
Skyjacker asserts that the trial court erred in rejecting its affirmative defense of setoff and compensation and contends that it proved by a preponderance of the evidence the value of the patterns wrongfully held by Bell.
Skyjacker’s claim of setoff and compensation is premised on the wrongful conversion of its patterns by Bell. We have determined that Bell possesses the patterns pursuant to a lien under Cal. Civ. Code § 3051 and has not wrongfully converted Skyjacker’s property. Moreover, even if there were merit to Skyjacker’s conversion claim, compensation would not be available. Compensation does not take place if one of the obligations is to return a thing of which the owner has been unjustly dispossessed. La. C.C. art. 1894; Aldredge v. Moses, 595 So.2d 379 (La.App. 3d Cir.1992). Additionally, for compensation or setoff to apply, the parties must owe to each other sums of money that are liquidated and presently due. La. C.C. art. 1893; Aldredge, supra, citing American Bank v. Saxena, 553 So.2d 836 (La.1989). The record does not show that Bell’s obligation to return the patterns is presently due. Under Cal. Civ.Code § 3051, Bell is entitled to retain possession of the patterns to secure Skyjacker’s payment of the two outstanding invoices. For these reasons, we find no merit to this assignment of error.

Motion for a New Trial

Raising various arguments, Skyjacker asserts that the trial court erred in denying its motion for a new trial because its judgment was clearly | incontrary to the law and evidence. The trial court has great discretion in ruling on a motion for a new trial, and its decision will not be disturbed on appeal absent an abuse of that discretion. Morehead v. Ford Motor Co., 29,399 (La.App.2d Cir.5/21/97), 694 So.2d 650, writ denied, 97-1865 (La.11/7/97), 703 So.2d 1265.
Skyjacker again argues that Bell had no lien when it first requested return of the patterns in the March 6, 2007, email and that Bell’s failure to return the patterns upon request and its continued possession of the patterns amounts to conversion of Skyjacker’s property. For reasons already addressed, we find no merit to this argument. The record is clear that Skyjacker does not dispute the debt owed to Bell. Moreover, the trial court did not err in its application and interpretation of Cal. Civ.Code § 3051. As such, the trial court’s judgment was clearly supported by the law and the evidence presented.
 Next, Skyjacker asserts that the motion for a new trial should have been granted because the trial court’s judgment was silent as to its reconventional demand. When a judgment is silent as to a claim or *536 demand, it is presumed that the claim or demand has been denied. Action Revenue Recovery, L.L.C. v. eBusiness Group, L.L.C., 44,607 (La.App.2d Cir.8/19/09), 17 So.3d 999. Skyjacker’s reconventional demand alleged wrongful conversion of its property by Bell and requested either the return of the patterns or an award in the amount of their value. The trial court’s judgment in favor of Bell for the amount of the invoices constitutes a denial of Skyjacker’s reconventional demand. In finding that Bell was within its | T1rights to hold the patterns pending payment of the invoices, the trial court rejected the claim of conversion asserted in the reconventional demand. In the absence of wrongful conversion, no basis exists for granting Skyjacker the relief of ordering the return of the patterns or payment of their value.
Lastly, Bell complains that the motion for a new trial should be granted to avoid a miscarriage of justice, namely, that Bell is under no obligation to return its patterns upon payment of the invoices. Skyjacker asserts that it has good reason to believe Bell will not return all of its property. However, the record does not support this belief, and Skyjacker has failed to establish grounds warranting a new trial under La. C.C.P. arts. 1972 or 1973. The trial court’s judgment has not been shown to be clearly contrary to the law and the evidence, nor has it been shown that good ground exists for a new trial of this matter.
We note that Bell has repeatedly asserted that it is ready and willing to return Skyjacker’s patterns upon payment of the two invoices. In an email on April 5, 2007, Bell informed Skyjacker that the patterns were boxed and ready to ship on March 14, 2007, but that it was awaiting payment of the two invoices. Bell followed up with a letter on April 5, 2007, conveying the same information, and another letter on May 21, 2007, with attached pictures of the items ready for shipment upon payment of the invoices. Bell’s president, Cesar Cappelli-ni, stated in his deposition which was offered into evidence that Skyjacker’s match plates and tooling are packed and waiting in a warehouse to be shipped. Bell is clearly entitled to retain possession of the patterns pending Skyjacker’s payment of the | ^invoices. Bell has repeatedly expressed its readiness to return Skyjacker’s property upon payment. It appears that the only impediment to Skyjacker obtaining its property has been its refusal to recognize Bell’s lien rights and to pay the amount it owes.

Attorney Fees

In these last assignments of error, Skyjacker challenges the award of attorney fees to Bell. First, Skyjacker argues that if its claim of compensation and setoff is granted, then the amount demanded by Bell was not correct and no award is due under La. R.S. 9:2781. We have found no merit to Skyjacker’s claim of setoff and compensation, and we find no merit to this argument.
Next, Skyjacker argues that attorney fees should be awarded only for legal work done in connection with Bell’s main demand and that there should be no award of attorney fees for work done on the recon-ventional demand.
La. R.S. 9:2781(A) provides for the recovery of “reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant.” Recoverable fees are limited to services incurred to collect the debt, not unrelated matters in litigation. Ballard’s Inc. v. North American Land Development Corp., 28,437 (La.App.2d Cir.6/26/96), 677 So.2d 648. The fee must be reasonable and in accordance with the Rules of Professional Responsibility, Rule 1.5. Id.
*537 Counsel for Bell submitted an affidavit requesting attorney fees in the amount of $9,957.50. After reviewing the submission, the trial court made |13some reductions and rendered a judgment awarding $9,104 in attorney fees. We observe that Skyjacker did not dispute that it owed payment on the two invoices. Its refusal to tender payment and to recognize Bell’s lien rights led to Bell’s suit on an open account to collect the debt. In response to Bell’s suit, Skyjacker asserted affirmative defenses of setoff and compensation and a baseless reconventional demand for damages for wrongful conversion. To recover on its main demand, Bell had to defend against Skyjacker’s various claims. What started as a simple suit to collect an undisputed debt resulted in litigation involving issues of California law, the taking of at least five depositions, motions for summary judgment by both parties, a trial, and a motion for a new trial by Skyjacker. The reconventional demand was not an unrelated matter; rather, it was directly related to Bell’s efforts to collect payment on the invoices and its assertion of lien rights entitling it to hold the patterns pending payment. Having reviewed this record, we find no abuse of discretion by the trial court in awarding attorney fees in the amount of $9,104, and we find no merit to these assignments of error.
Bell has filed an answer to the appeal requesting additional attorney fees for appellate work. Additional fees may be awarded when the debtor appeals unsuccessfully. Ballard’s, supra. We find that an additional award of $1,000 is warranted.
| ^CONCLUSION
For the reasons stated, we affirm the trial court’s judgment and award Bell an additional $1,000 in attorney fees. Costs of this appeal are assessed against Skyjacker.
AFFIRMED.