William A. GOICHMAN, on behalf of himself and a class of all persons similarly situated, Plaintiff-Appellant,

v.

RHEUBAN MOTORS, INC., Defendant-Appellee.

No. 80–5966.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 3, 1982.

Decided July 2, 1982.

Rehearing Denied Aug. 5, 1982.

---

Richard M. LeBell, Beverly Hills, Cal., for plaintiff-appellant.

Steven V. Rheugan, Zola & Rheuban, Encino, Cal., for defendant-appellee.

Before WALLACE, HUG, and ALARCON, Circuit Judges.

WALLACE, Circuit Judge:

Goichman brought this action for monetary and injunctive relief against Rheuban Motors, Inc. (Rheuban), a private towing company, pursuant to 42 U.S.C. § 1983. Goichman alleged that Rheuban's detention of his automobile was not authorized by statute and, even if authorized, constituted

a deprivation of property without due process of law. The district court dismissed the action with prejudice, holding that the complaint failed to state a claim for relief. Goichman appeals and we affirm.

## I

The facts are not in dispute. Acting at the direction of a Los Angeles law enforcement officer, Rheuban took possession of the Goichman vehicle on February 6, 1980, and towed it to a storage garage. Later that day, Goichman went to the garage and demanded return of the vehicle. Rheuban conditioned return of the automobile on payment of $32.00 in towing charges and $4.50 in storage charges. Goichman paid the charges, and Rheuban released the vehicle. Goichman does not allege that his vehicle was legally parked or that he was without notice that the vehicle was subject to removal.

We must decide three legal questions: first, whether the actions of the towing company, a private entity, were "under color of state law" for purposes of 42 U.S.C. § 1983; second, whether a possessory lien in favor of the towing company was statutorily authorized; and third, whether, under the circumstances of this case, Goichman was deprived of his property without due process of law.

## II

■ Section 1983 provides a claim for damages against persons who, under color of state law, deprive any person of any right secured by the Constitution and laws of the United States. Rheuban maintains that the complaint fails to state a claim because, as a private entity, Rheuban could not have acted under color of state law. The law is clearly otherwise. "Private persons, jointly engaged with state officials in [a] prohibited action," act under color of state law. *United States v. Price*, 383 U.S. 787, 794, 86 S.Ct. 1152, 1156, 16 L.Ed.2d 267 (1966). In *Stypmann v. City and County of San Francisco*, 557 F.2d 1338 (9th Cir. 1977) (*Stypmann*), on facts similar to those before us, we held that a private towing company acting at the behest of a police officer and pursuant to a statutory scheme designed solely to accomplish the state's purpose of enforcing its traffic laws, acts under color of state law for purposes of section 1983. *Id.* at 1341–42, *citing Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974). This holding is conclusive on the state action issue.

## III

■ Goichman argues that Rheuban's seizure and detention of his vehicle and assertion of a lien for the towing and storage charges were not statutorily authorized. He argues that while Los Angeles Municipal Code § 80.77.1[1] authorizes towage, it does not provide for a garageman's lien.

1. *Notice of Procedural Options*

(1) the following notice shall be given substantially as stated below . . .:

"ATTENTION. As vehicle owners or other persons entitled to possession of impounded vehicles, you have the following options:

(A) You may recover possession of your vehicle by paying to the garage having custody of the vehicle the towing and any storage fees that may have accrued.

(B) If you take issue with the impoundment of your vehicle, you may:

(i) Recover possession of the vehicle by paying the towing and storage fees that have accrued to such garage and file a claim for damages with the City Clerk of the City of Los Angeles in accordance with the procedures provided by law; or

(ii) Demand (on a form provided by the City) an administrative hearing before an independent hearing officer as to whether there was a sufficient factual and legal basis for impounding your vehicle. To be entitled to such hearing, your written demand must be filed with the *(name of department or office)* within (I) 5 workdays after you learned that your vehicle was impounded or was missing; or (II) within 15 workdays after the city mailed notice to the vehicle's registered owner that the vehicle had been impounded; whichever occurs first. *The hearing must be held within 48 hours after the filing of your written demand.* A determination that there was an insufficient factual or legal basis for impounding your vehicle will require the garage to release the vehicle to you without your having to pay the towing and storage fees. A hearing may be demanded by filing

For this, he contends, Rheuban must rely upon section 22851 of the California Vehicle Code, which creates a possessory lien for towing and storage charges. Based upon our 1977 decision in *Stypmann*, Goichman argues that section 22851 was void until it was amended in 1980, subsequent to the seizure of his vehicle. We disagree.

When *Stypmann* was decided, the California Vehicle Code provided certain procedures pursuant to which public officials could remove a vehicle from public or private property and authorize its storage. The Code did not provide for a hearing at which the vehicle's owner could challenge the removal of the vehicle. We held that absent provision for a hearing, section 22851 did not meet due process requirements. *Stypmann, supra*, 557 F.2d at 1343. Contrary to Goichman's argument, however, section 22851 was not necessarily rendered wholly void by our decision in *Stypmann*. A more plausible interpretation is that we held the statute invalid as applied, or in other words, that private vehicles could not be towed and stored pursuant to it without at least some sort of hearing. Although we concluded that section 22851 did not by itself meet the requirements of due process, we suggested that the statute could be saved if implemented in conjunction with an ordinance providing a sufficiently prompt hearing. *Id.* at 1344.

That portion of section 22851 which creates a garageman's lien was neither challenged in nor affected by *Stypmann*. Moreover, the constitutional defect we found in the statute, the lack of a sufficiently prompt hearing, is not present here. As we explain in the next section, not only does the municipal ordinance provide for a hearing, but so does section 22852 of the California Vehicle Code, a provision enacted by the California legislature in 1979, after *Stypmann*. The amendments to section 22851 in 1980, after Goichman's car was towed, simply clarified the manner in which a garage owner can satisfy his lien at a lien

sale and added a provision against liens on personal property in towed vehicles, neither of which is relevant here. *See* Cal. Vehicle Code § 22851 (West Supp. 1982). Therefore, we reject Goichman's argument that the removal of his vehicle and the assertion of a lien were not authorized by statute.

### IV

We therefore turn to the procedural due process issue. The constitutional deficiency which *Stypmann* identified in section 22851 was remedied when Cal. Vehicle Code § 22852 was enacted in 1979. The current version of section 22852, which was effective at the time Goichman's car was towed, provides:

> Whenever an authorized member of a public agency directs the storage of a vehicle, as permitted by this chapter, . . . the agency or person directing the storage shall provide the vehicle's registered and legal owners . . . with the opportunity for a post-storage hearing to determine the validity of the storage.

The hearing must be held within forty-eight hours of request. *Id.* § 22852(a)(3). Los Angeles Municipal Code § 80.77.1(d)(ii), (e), also provides for a hearing within forty-eight hours of a written request. In effect, Goichman contends that these statutory provisions do not provide a procedure for seizure of personal automobiles consistent with due process.

Goichman does not challenge the towage of his vehicle. He argues that he was deprived of his property without due process of law when he went to the garage and Rheuban refused to return the car without payment of the towing and storage charges. For purposes of this case, we can therefore assume that the circumstances surrounding the removal of Goichman's vehicle constituted an "extraordinary situation" justifying immediate towage without prior notice and hearing. *See Calero-Toledo v. Pearson*

---

the appropriate form with the *(name of department or office)* at *(place)* between ___ a. m. and ___ p. m. on any day other than Saturday, Sunday, and City holidays.

Los Angeles, Cal., Municipal Code § 80.77.1(d) (emphasis in original).

*Yacht Leasing Co.*, 416 U.S. 663, 677, 94 S.Ct. 2080, 2088, 40 L.Ed.2d 452 (1974); *Stypmann, supra*, 557 F.2d at 1342 & n.10. *See also Sutton v. City of Milwaukee*, 672 F.2d 644, 648 (7th Cir. 1982) (due process does not require pre-towage hearing). The only question before us is whether the post-seizure hearing provided by section 22852 of the California Vehicle Code and the Los Angeles ordinance is sufficiently prompt to satisfy due process requirements. Goichman argues that due process necessitates a provision for return-on-demand, or at least a hearing within a period briefer than forty-eight hours. We disagree.

■■■ Due process is a flexible concept, and its procedural protections will vary depending on the particular deprivation involved. *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). Determination of what procedural requirements are necessary to satisfy due process in any one situation requires a sensitive inquiry into the competing governmental and private interests affected. *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). These include the "private interest that will be affected by the official action," the "risk of an erroneous deprivation" of that interest under the existing procedures and the "probable value, if any, of additional or substitute procedural safeguards," and finally, the interest of the government, including "the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335, 96 S.Ct. at 903.

We begin with the private interests. The private interest in the uninterrupted use of an automobile is significant. "A person's ability to make a living and his access to both the necessities and amenities of life may depend upon the availability of an automobile ...." *Stypmann, supra*, 557 F.2d at 1342–43 (footnote omitted). While the private interest here is of the same nature as that involved in *Stypmann*, it is somewhat less substantial. The deprivation of an automobile for forty-eight hours, while a burden, is not of the same magnitude as the five-day deprivation involved in *Stypmann*.

■■■ The interest of the government, however, is more substantial than that identified in *Stypmann*. Were we to require immediate release on demand, as proposed by Goichman, we would jeopardize the government's "considerable interest in imposing the cost of removal upon the vehicle owner and retaining possession of the vehicle as security for payment," *id.* at 1343, an interest not at stake in *Stypmann*. Release-on-demand effectively requires the city either to provide on-the-spot hearings or to secure the costs of towage itself. Either option would prove burdensome and expensive. Alternatively, the city could provide its own towing service, also an expensive option, or leave vehicles where they are illegally and often unsafely parked. Neither of these options is satisfactory. We conclude that the government's interest in efficient and inexpensive towage of illegally parked automobiles is sufficient to outweigh the private interest in return-on-demand.

We also conclude that the government need not grant an immediate hearing. Theoretically, a hearing could be provided in less than forty-eight hours, but it is unlikely that the hearing could be significantly expedited without imposing unmanageable burdens on the city. Under the ordinance, the city must establish probable cause for the removal of the vehicle. If unable to meet this burden, the city must itself pay the towing and storage costs. In many, if not all, cases, the city must rely on the testimony of the officer who issued the citation. The city needs sufficient time to arrange for the officer's presence at the hearing, including time to arrange for substitute coverage of the officer's usual duties. Furthermore, in some cases, an officer's day off may fall on the day following the hearing request. To arrange for the officer's appearance at a hearing in twenty-four hours, for instance, may be impossible. Preparation for the hearing also requires attention to certain procedural details. The

citation must be delivered to the office responsible for conducting the hearings. A hearing officer must be scheduled. In some cases, the city may need to schedule the appearance of legal counsel.

■ Balancing the governmental and private interests at stake, we hold that provision for a post-seizure hearing within forty-eight hours satisfies the requirements of due process. A more expeditious hearing would not significantly lessen the risk of an erroneous deprivation. While a more expeditious hearing would, in some measure, lessen the burden on the individual, we conclude that this burden is not sufficient to outweigh the fiscal and administrative impact of such a hearing requirement on the city's interest in enforcing its traffic laws.

■ Goichman raises two additional arguments that do not merit extended discussion. First, he insists that due process requires the city to establish a procedure under which the vehicle owner may obtain release of his vehicle by posting a bond in an amount less than the towing and storage charges. We conclude, however, that the government's considerable interest in retaining possession of the vehicle as security for the owner's payment of towing and storage charges outweighs the private interests that would be served by the procedure. Because the substitute procedure Goichman proposes would not ensure that the owner of a lawfully towed vehicle pays the entire amount of these charges, the

fiscal burden it would create for the city is too great.

■ Second, Goichman argues that he was denied due process because California law does not permit the owner of a towed vehicle to challenge the reasonableness of the lien imposed by a private towing company. We disagree. Under general principles of contract law, where, as here, the parties make no express agreement on the contract price,[2] the law implies an agreement for a reasonable price. *See* Restatement (Second) of Contracts §§ 33, 204 (1981); 1 Corbin on Contracts §§ 97, 99 (1963 & Supp. 1980). Should a towing company assess more than reasonable charges, the vehicle owner may tender payment of a reasonable amount. Under California law, "redemption from a lien is made by performing, or *offering to perform*, the act for the performance of which it is a security . . . ." Cal. Civil Code § 2905 (emphasis added). If, following such tender, a demand is made for the vehicle and that demand is refused, a conversion occurs. *Loughborough v. McNevin*, 74 Cal. 250, 14 P. 369 (1887) (en banc). *See* Cal. Civil Code § 2910; *Enfield v. Huffman Motor Co.*, 117 Cal.App.2d 800, 257 P.2d 458 (1953); *Hossom v. City of Long Beach*, 83 Cal.App.2d 745, 750, 189 P.2d 787, 791 (1948). Should the vehicle owner elect to pay the excessive fees demanded in order to obtain release of his vehicle, his action for wrongful detention and for damages pursuant thereto survives.[3] These remedies are sufficient to

---

**2.** The towing company has a contract based on a promise to pay implied in law. It is not clear whether, under the statutory scheme, the implied promise is made by the vehicle owner or by the city. Section 22851 of the California Vehicle Code may be construed to authorize the city to incur the towing and storage charges as the owner's agent, or to impose upon the vehicle owner the responsibility to pay the charges as an implied condition of the right to operate the vehicle. In either case, the vehicle owner is the principal obligor, and the city is the beneficiary of the contract.

**3.** The right of a garageman's lien in California "is governed by general common law principles applicable to all liens" unless "specifically controlled by statute." *Enfield v. Huffman Motor*

Co., 117 Cal.App.2d 800, 807, 257 P.2d 458, 462 (1953). One treatise has summarized the common law as follows:

A garageman's . . . lien is not extinguished because of a finding that the sum demanded does not reflect the work performed, unless there is bad faith.

[However, w]here an excessive sum is demanded . . . the owner may discharge the lien by a tender of payment of the sum actually due.

The rule is different where the claim is obviously . . . unreasonable, or made in bad faith, but even in that case, the [garageman] does not lose the debt in the amount contracted for.

. . . .

meet the requirements of due process. *See Parratt v. Taylor*, 451 U.S. 527, 539, 101 S.Ct. 1908, 1915, 68 L.Ed.2d 420 (1981).

AFFIRMED.

A tender of the amount due to a garageman ... for services rendered ... as a general rule ... discharges the lien; and on a garage keeper's refusal to surrender an automobile on tender of the amount of the lien, the owner may sue in replevin or for conversion [or] pay the amount claimed and recover the excess . . .

14 Blashfield Automobile Law & Practice § 479.93, at 586–87, § 479.95, at 588 (3d ed. 1969) (footnotes omitted).