**Gary Paul NOLT, Plaintiff,**

v.

**Jack ISADORE, T.H. Whalen, and the City and Borough of Juneau, Alaska, Defendants.**

**No. A81–423 CIV.**

United States District Court,
D. Alaska.

May 31, 1984.

Michael H. Woodell, Bradbury, Bliss & Riordan, Anchorage, Alaska, for plaintiff.

Stanley B. Malos, Robertson, Monagle, Eastaugh & Bradley, Juneau, Alaska, for defendants.

## MEMORANDUM AND ORDER

VON DER HEYDT, Chief Judge.

██ THIS CAUSE comes before the court on cross motions for summary judgment. Summary judgment may be granted if it appears from the record, after viewing all evidence and factual inferences in the light most favorable to the non-moving party, that there are no genuine issues of material fact and that the moving party is entitled to prevail as a matter of law. *International Ladies Garment Workers Union v. Sureck*, 681 F.2d 624, 629 (9th Cir. 1982). The moving party has the burden of showing that no genuine issue of material fact exists. *Ron Tonkin Gran Turismo, Inc. v. Fiat Distributors, Inc.*, 637 F.2d 1376, 1381 (9th Cir.), *cert. denied*, 454 U.S. 831, 102 S.Ct. 128, 70 L.Ed.2d 109 (1981).

Defendant City and Borough of Juneau (Juneau) seeks judgment as a matter of law dismissing plaintiff's complaint on the grounds that the harbormaster was under a duty to impound plaintiff's vessel since the vessel had been abandoned and that the harbormaster cannot be liable for the destruction of the vessel since an owner agrees upon mooring a vessel to accept the risk of impoundment should the owner fail to "live up to his responsibilities."

Plaintiff Nolt moves for partial summary judgment seeking a declaration as a matter of law that the ordinances relied upon by defendants to impound his fishing vessel, the Will Do Too, are unconstitutional facially and as applied in denying plaintiff procedural due process prior to and after impoundment. This issue is dispositive of defendants' motion as well, inasmuch as it challenges defendants entitlement to judgment as a matter of law. Accordingly, the court addresses it at the outset.

a. Factual Background

Plaintiff owned a 28 foot wooden hull fishing vessel which he purchased in April, 1979 for $18,000. In the spring of 1980, plaintiff leased the vessel to one Don Baker. Baker moored the vessel at Harris Harbor, a small boat harbor owned by the City and Borough of Juneau. Moorage fees for the use of Harris Harbor were unpaid. The parties disagree as to whether plaintiff or Don Baker was responsible for moorage fees and as to whether plaintiff was properly billed.

In July plaintiff and Baker terminated the lease and plaintiff regained possession of the vessel. Plaintiff moved the vessel to another small boat harbor, City Float, a transient dock facility with no permanent mooring facility. Genuine issues of material fact have been raised and the court assumes for the purposes of plaintiff's summary judgment motion that plaintiff failed to properly register the Will Do Too for transient moorage at City Float as required by Juneau City and Borough Code (hereafter C.B.J.) § 5.25.010. Plaintiff also failed to pay moorage fees which accrued against the Will Do Too during the time it was moored at City Float. The harbormaster for the City and Borough of Juneau prepared one or more notices of back due moorage fees which were sent to Mr. Nolt at a Ketchikan mailing address plaintiff had given the harbormaster. Those notices were returned unclaimed.

A notice of intent to impound was tagged onto plaintiff's vessel on January 12, 1981. The tag stated: "Please move the vehicle before 0800 am on 1–26, 1981 to prevent it's [sic] being cited and impounded." The notice indicated a violation of C.B.J. 85.25.-080 which prohibits the failure of a boat owner to perform duties. The tag remained visible on the Will Do Too for four or five days until it was torn off. Whalen dep. at 45, Exhibit 3 Pl. Motion for Summary Judgment. A Juneau attorney, Mary Alice McKeen, contacted the harbormaster on Nolt's behalf during this time period. Isadore Aff. at ¶ 8. The parties dispute whether attorney McKeen supplied the harbormaster with Nolt's then current address

at Lemon Creek Correctional Facility and what information and representations were exchanged between McKeen and the harbormaster. On January 28, 1981 after the boat was tagged and before it was towed and impounded, one Karen Williams Dohle moved on board the Will Do Too at the request of McKeen.

During the time the Will Do Too had been moored nearby, one David Matelski had performed caretaking service on the Will Do Too by charging on board batteries. The batteries were being used to power a pump which drained water leaking into the vessel. Isadore Aff. at ¶s 10, 11. Matelski informed the harbormaster in late January that he would not be available to care for the vessel in the near future. *Id.*

The harbormaster contacted one Joe Kinch to have the vessel moved from City Float to Harris Harbor for impoundment. Some time during the night of January 31 the Will Do Too sank after it had been towed to Harris Harbor.

After several days and in any event no earlier than February 2, 1981 the vessel was refloated. The City made efforts to keep the vessel afloat at Harris Harbor for about one month until moving the vessel to an abandoned grid elsewhere in Harris Harbor. The vessel sank again there and was allowed to fill and empty with the tide. In September of 1981 the City floated the vessel for the last time for the purpose of moving it to a "bone yard" where it was crushed and rendered a total loss.

b. Discussion

Plaintiff brings this action against Juneau, its harbormaster and assistant harbormaster pursuant to 42 U.S.C. § 1983 for deprivation under color of law of plaintiff's constitutional rights. Plaintiff alleges that the city's seizure and impoundment of the Will Do Too deprived him of property without due process of law in violation of rights guaranteed under the 14th Amendment.

1. Is any process due.

The Fourteenth Amendment's procedural due process protections attach to any significant deprivation of private property. The defendants have not disputed and the court concludes that the City's impoundment of the Will Do Too constitutes a significant interference with plaintiff's possessory interests in the vessel. *Cf. Stypmann v. City and Cty. of San Francisco,* 557 F.2d 1338, 1342 (9th Cir.1977) (loss of use and enjoyment of car by impoundment deprives owner of property interest cognizable under Due Process Clause).

(ii) What process is due.

■ Procedural due process demands that notice and an opportunity for some kind of hearing appropriate to the case be afforded to the individual whose property is seized. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950).

■ Unless there is a need for quick action or facts which make it impractical, a hearing prior to deprivation of property is required by the due process clause. *See Fuentes v. Shevin,* 407 U.S. 67, 81–82, 92 S.Ct. 1983, 1994–1995, 32 L.Ed.2d 556 (1972). *See also Parratt v. Taylor,* 451 U.S. 527, 539, 101 S.Ct. 1908, 1914, 68 L.Ed.2d 420 (1981) (summarizing cases). Where there is a need for quick action or impracticality prior to seizure, the availability of some meaningful means to assess the propriety of the state's action after the initial taking can satisfy due process requirements. *Parratt v. Taylor,* 451 U.S. at 539, 101 S.Ct. at 1914. The opportunity must be granted at a meaningful time and in a meaningful manner. *Id.* at 540, 101 S.Ct. at 1915.

■ Defendants argue that fact questions have been raised with respect to whether a pre-deprivation hearing was required in this case either because (1) there was a need for quick action resulting from the vessel's unseaworthy condition or because (2) the failure of the boat owner to register his boat rendered a pre-seizure hearing impractical since there were no means to afford the owner notice.

On the record before the court, the evidence that there was a need for quick action is not persuasive. Defendants' delayed impoundment over two weeks after posting notice of their intent to impound.[1] On summary judgment, however, it is not the court's obligation to evaluate the persuasiveness of evidence, but merely the existence of a question of fact, taking the facts in a light favorable to the opposing party. Accordingly, triable questions of fact have been raised with respect to whether there was a need to quickly remove the vessel from City Float sufficient to excuse a hearing prior to impoundment.

Similarly, questions of fact have been raised regarding whether plaintiff failed to register the Will Do Too and whether that failure rendered a pre-seizure hearing impractical. It again appears from the record that had a pre-seizure hearing procedure been in place, the harbormaster may have had actual knowledge or the means to obtain actual knowledge of plaintiff's whereabouts. Defendants have submitted defendant Isadore's affidavit alleging, to the contrary, that he had no knowledge prior to impoundment the plaintiff was incarcerated at the Lemon Creek Correctional Facility. *See* Isadore Aff. ¶ 16b.[2] These allegations again are sufficient to raise a question of fact with respect to whether notice and hearing prior to seizure were for that reason impractical.

Even though fact questions have been raised with regard to the need for a pre-seizure hearing in this case, there are no fact questions regarding the need for a hearing after the initial taking. Defendants learned of plaintiff's address no later than February 2nd, 1981, two days after impoundment and sinking. *See* Defendants' Exhibit C at 2. Moreover, plaintiff has established, as a matter of law, that the ordinances are constitutionally deficient as a result of their failure to provide even for a post-seizure hearing.

The impoundment statute challenged here is constitutionally defective in that there is no provision for a meaningful hearing even after seizure. *See Stypmann v. City and County of San Francisco*, 557 F.2d 1338, 1344; *Graff v. Nicholl*, 370 F.Supp. 974 (N.D.Ill.1974). Like the ordinance in *Stypmann* the ordinance in question here provided no opportunity for the owner of an impounded boat to obtain its release by posting bond and establishes no procedure to assure reliability of the determination that impoundment was justified. The only procedure by which an owner may recover his vessel is set out in C.B.J. § 82.25.180(c): "At any time prior to the start of the [public] auction, the owner, master, operator or managing agent may redeem the boat by a cash payment of all city and borough charges against the boat." Presumably, as in *Stypmann*, an owner who recovers a vessel by paying all charges assessed by the City and Borough may thereafter obtain judicial process through the pursuit of collateral civil remedies such as damages for conversion. *See, e.g. Stypmann v. City and County of San Francisco*, 557 F.2d at 1343 n. 19. In *Stypmann*, however, the Ninth Circuit Court of Appeals found that such a remedy was insufficient in light of the nature of the private interest at stake and the government's sole interest in avoiding the inconvenience and expense of a reasonably prompt hearing to establish probable cause for impoundment. *Id.* at 1342–43. Similar private interests are at stake when a vessel moored in one of Juneau's boat harbors is impounded. A vessel moored there is not significantly less likely than an automobile parked on the street in San Francisco County to be essential to an individual's access to employment and necessities. Furthermore, while the City and Borough of Juneau has a significant interest in pre-hearing seizures in emergency situations to alleviate dangerous conditions in its harbors,

---

**1.** There may be evidence to suggest that a need for quick action arose in the interim as a result of the boat's caretaker's departure.

**2.** Defendant Isadore's affidavit contains two paragraphs 16. For convenience they will be referred to as 16a and 16b.

that interest is not at stake in considering whether a post-seizure hearing is required.

The government interest which is at stake appears no greater than that argued in *Stypmann,* namely, to avoid the inconvenience and expense of a prompt hearing to establish probable cause for the continued impoundment of vessels. *See Stypmann,* 557 F.2d at 1343. That burden, however, does not outweigh the private interests involved.[3]

■ The defendants argue that the availability of a state tort action against the City and Borough for conversion affords the plaintiff adequate due process.

In *Parratt v. Taylor,* 451 U.S. 527, 543, 101 S.Ct. 1908, 1916, 68 L.Ed.2d 420 (1981) the Supreme Court held that the availability of a tort claims procedure against the state of Nebraska satisfied procedural due process requirements for a hearing at a meaningful time when the deprivation of plaintiff's property was a random and unauthorized act which did not occur as a result of some established state procedure. In the case sub judice the harbormaster asserts that his acts were neither random nor unauthorized but, on the contrary, in reliance upon established procedures of the City and Borough of Juneau. Isadore Aff. at ¶ 15, 16b, 17. To uphold the constitutionality of such an intentional deprivation of property on the basis of an available state tort remedy goes far beyond the holding in *Parratt. Cf. Keniston v. Roberts,* 717 F.2d 1295, 1301 (9th Cir.1983) (distinguishing *Parratt* from intentional deprivations of property).

Moreover, *Goichman v. Rheuban Motors, Inc.,* 682 F.2d 1320 (9th Cir.1982) offers no support for defendants' assertion that a state tort remedy for conversion against Juneau is an adequate post-seizure hearing. In *Goichman,* the court of appeals tested the adequacy of Cal. Vehicle Code § 22852's provision for a post-seizure hearing within forty-eight hours of a re-quest to determine the validity of a storage. The court of appeals concluded after balancing the interests that a post-seizure hearing within forty-eight hours was adequate. The court of appeals went on to conclude that the failure of California law to provide for an early opportunity to challenge the reasonableness of a garagemen's lien was not violative of the due process clause since the over-charged car owner had an action for wrongful deprivation to test the excessiveness of the tow charge. That latter aspect of the *Goichman* decision has little relevance to these facts. The private interests implicated for that issue were not, as here, the uninterrupted use of a vehicle but only the burden of paying an excessive charge to obtain its release. Moreover, the adequacy of the state tort remedy to challenge the reasonableness of a towing fee in *Goichman* must be measured in light of the existing opportunity in California to test, within forty-eight hours, the validity of the government official's decision to impound the vehicle. No such opportunity was available to an owner whose boat was moored at a Juneau boat harbor in 1981. Accordingly, plaintiff is entitled to partial summary judgment as a matter of law that plaintiff was deprived of property without due process of law as a result of defendants' failure to provide an opportunity for a hearing to determine whether there was probable cause to warrant the continued impoundment of the vessel. Further, for the reasons set out above, defendants' motion for summary judgment is denied.

### Extent of Liability and Remedy

■ As plaintiff points out, the denial of procedural due process rights does not give rise to a recovery for actual damages unless the plaintiff can meet a "but for" test. *See Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). If procedural due process would have had no effect on the outcome had it been granted,

---

**3.** Defendants have offered no evidence on the severity of the burden imposed by a prompt, post-seizure hearing. The court notes, however, that during the progress of this litigation, the City and Borough has amended its impoundment ordinance to establish *pre*-impoundment hearing procedures.

recovery for actual damages resulting from the denial of due process may be denied. *Id.* Defendants have raised triable questions of fact concerning whether a prompt hearing after seizure would have had any effect on the outcome of this case. Those questions include whether, assuming the propriety of moorage fees and charges, plaintiff would have been able and willing to recover possession of the vessel and the value of plaintiff's vessel at the time of the deprivation of civil rights.[4]

### Claim for Conversion

The third cause of action stated in plaintiff's second amended complaint states a claim for conversion resulting from defendants' seizure of the Will Do Too and its subsequent sinking and destruction. This court has pendent subject matter jurisdiction of this state law claim. *See Blake v. Town of Delaware City*, 441 F.Supp. 1189, 1204 (D.Del.1977). The tort of conversion is defined as an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel. *McKibben v. Mohawk Oil Co.*, 667 P.2d 1223, 1228 (Alaska 1983). There is no disputing that defendants intentionally exercised dominion and control over the Will Do Too on January 31 and thereafter until the vessel was crushed. Defendants argue, however, that a genuine issue of material fact exists to preclude summary judgment. The fact issue identified is whether the vessel sank as a result of a hole in her stern and whether that condition was known to the plaintiff when the vessel was moored at City Float. *Cf. Blake v. Town of Delaware*, 441 F.Supp. at 1205 (summary judgment denied to try an issue of fact regarding inability to return seized cars). The condition of plaintiff's property at the time of the City's interference is not relevant to defendants liability but rather to the value of the chattel at the time of conversion. Defendants

misread *Blake v. Town of Delaware* in concluding the case supports their position. In that case, the district court denied summary judgment in order to try the issue of which defendants, the city officials or the private towing company, was liable "for the inability to return" plaintiff's chattel. *Blake v. Town of Delaware*, 441 F.Supp. at 1205, 1205 n. 66. While the value of the vessel is at issue, that issues goes to damages and need not preclude a partial summary judgment.

Defendants also argue that plaintiff is not entitled to judgment as a matter of law since the exercise of control over the vessel was not inconsistent with plaintiff's right to control the vessel. More specifically, defendants argue that a lien in favor of the City and against the vessel had arisen as a result of unpaid moorage fees. Since the City was therefore authorized by statute to seize and sell the vessel to satisfy its lien, it is argued that the exercise of authority was not inconsistent with plaintiff's rights to control the vessel. Although the defendants' lien may have been valid, defendants' retention of possession over the chattel becomes wrongful and therefore inconsistent with plaintiff's possessory rights when the City failed to provide a post-seizure hearing. *See Blake v. Town of Delaware*, 441 F.Supp. at 1205; *see also Tulloch v. Cockrum*, 115 Or. 601, 236 P. 1045 (1925) (improper foreclosure of lien precludes reliance on lien as a defense to conversion) *cited with approval Rich v. Runyon*, 52 Or.App. 107, 112, 627 P.2d 1265, 1268 (1981).

Defendants have also argued that a question of fact exists with respect to whether plaintiff had the requisite possessory interests in the vessel at the time of impoundment. Defendants cite claims by plaintiff's father for amounts unpaid on a loan for the purchase of the vessel and a lien claim by Don Baker. Neither fact issue is relevant, however, since the claims

---

**4.** During the course of this lawsuit, defendants amended the pertinent provisions of C.B.J.'s vessel impoundment statute. In light of the amended statute, plaintiff has withdrawn his summary motion for a permanent injunction and that aspect of the remedy is not in issue.

do not implicate plaintiff's title or right to possession.

 Summary judgment on the issue of liability for conversion must be denied, however, since questions of fact have been raised regarding whether plaintiff had in fact or *apparently* abandoned his property prior to defendant taking possession of it and thereafter following the sinking and refloating of the vessel. *See generally Rinden v. Hicks*, 119 N.H. 811, 408 A.2d 417, 419 (1979). *See* Affidavit of Isadore at ¶ 5, 6, 10, 11, Isadore Dep. p. 60; Def.Ex. A at 8.

### Good Faith Immunity for Individual Defendants

Defendants Jack Isadore and Tom Whalen have alleged their actions were taken under color of law and asserted a good faith immunity defense to the civil rights claim. They claim they neither knew nor reasonably should have known that their actions in impounding the vessel and thereafter in failing to provide plaintiff an opportunity for a hearing violated plaintiff's constitutional rights. The plaintiff asserts that harbormasters are not entitled to qualified immunity since the operation of a dock is a proprietary function to which no immunity applied at common law. The court has been unable to locate any decisions addressing this issue and declines to rule on the question at this juncture. The court instead requests further briefing by the parties within 45 days on the questions whether the harbormaster and assistant harbormaster of the City and Borough of Juneau are entitled as a matter of law to raise a qualified immunity defense and whether any fact questions have been raised with respect to whether the individual defendants knew or should have known their acts were unconstitutional. The court directs counsels' attention to *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

### Conclusion

Plaintiff is entitled to partial summary judgment holding that the impoundment procedures in place and applied by the City of Juneau violated plaintiff's constitutional right to due process in that plaintiff was deprived of property without any meaningful hearing, even after seizure. Factual questions have been raised with respect to the extent of defendants' liability, viz, whether plaintiff is entitled to recover his actual damages as a result of the deprivation of property. Factual questions also persist regarding the extent of damages. Plaintiff's claim for summary judgment on the issue of conversion is denied in light of factual questions regarding defendants' defense of apparent abandonment. The court withholds decision on the individual defendant's defense of good faith immunity pending further briefing.

In accordance with the memorandum above,

IT IS SO ORDERED.