**Robert DRAPER, Plaintiff-Appellant,**

v.

**Davis S. COOMBS, et al., Defendants-Appellees.**

No. 83-4026.

United States Court of Appeals, Ninth Circuit.

Submitted March 7, 1984.

Submission Vacated March 28, 1984.

Resubmitted Nov. 12, 1985.

Decided June 24, 1986.

Robert A. Draper, pro se.

Kenneth O. Eikenberry, Don G. Daniels, Olympia, Wash., Harry Auerbach, Portland, Ore., for defendants-appellees.

Before SCHROEDER, FARRIS and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

The plaintiff brought this 42 U.S.C. § 1983 action *pro se* against the State of Washington, two Washington State Troopers, Clark County, Washington and several county officials, the City of Portland, and three Portland police officers. Although he asserted a number of claims, his primary contention is that he was extradited from Oregon to Washington in violation of federal and state extradition statutes. He also challenges the legality of the towing of his automobile after his arrest. The district court dismissed some of his claims and granted summary judgment for the defendants on the remaining ones. We hold that the plaintiff properly pleaded section 1983 claims based on his extradition in violation of the federal and state extradition statutes and for the towing of his automobile pursuant to an unconstitutional municipal ordinance, and that the award of summary judgment on those claims was improper except with respect to the claims against the State of Washington.

## I. FACTS

In July 1980, Robert A. Draper, accompanied by three passengers, was driving his automobile south on Interstate Highway 5 in the State of Washington toward the Oregon border. While still in Washington, Washington State Patrol Trooper Coombs attempted to stop the automobile because Draper was driving erratically and in excess of the speed limit. He continued to drive in that manner, with Trooper Coombs in pursuit, across the state line into Oregon.

Trooper Coombs pursued Draper to Portland, Oregon where he subsequently forced Draper to stop. Coombs detained Draper and the passengers and awaited the arrival of police officers from the City of Portland whom he had called for assistance. When Portland Police Officers John Goff and John Garvey arrived at the scene, the officers from the two jurisdictions discussed the question whether Draper would be taken into custody by Coombs for return to Washington or would be arrested by the Portland police officers and initially detained in Oregon. In hopes of clarifying the apparent uncertainty as to the proper procedure to be followed, Coombs conferred with his superior, Sergeant Cook, while the Portland officers conferred with their superior, Sergeant Dick. Following these consultations, Coombs arrested Draper for "attempting to elude a pursuing police vehicle" and transported him to Clark County Jail in Washington.

After Draper's arrest, the Portland officers ordered Draper's automobile towed away by Sam's Towing, a private towing company. Later that same day, Draper's daughter, one of the three passengers in his car at the time of the arrest, attempted to recover the automobile from the towing company. Sam's required her to pay $53.95, in towing and other charges, before it would release the automobile. After the charges were paid, Sam's released the automobile.

Draper was convicted in Washington state court under a Washington statute for

attempting to elude a Washington trooper.[1] He was sentenced to serve a five year term in the Washington State Penitentiary.

Draper filed this *pro se* action seeking damages under 42 U.S.C. § 1983 (1982) from the State of Washington, Trooper Coombs and Sergeant Cook, Clark County, Washington and several county officials ("Clark County defendants"), the City of Portland, Portland Police Officers Goff and Garvey, and Sergeant Dick. The district court first dismissed the claims against the Clark County defendants and then those against the State of Washington. The district court subsequently granted summary judgment on the claims against the remainder of the defendants.

## II. THE IMMUNITY OF THE STATE OF WASHINGTON AND THE WASHINGTON STATE TROOPERS UNDER THE ELEVENTH AMENDMENT

### A. *Section 1983 Claims Against the State of Washington*

The district court dismissed Draper's 42 U.S.C. § 1983 claims against the State of Washington. Because the eleventh amendment[2] bars the federal courts from considering such claims, we affirm their dismissal.[3] We have emphasized that "[u]nder the Eleventh Amendment, states that have not consented to suit are immune from [42 U.S.C.] § 1983 suits in federal court." *McConnell v. Critchlow*, 661 F.2d 116, 117 (9th Cir.1981) (citing *Quern v. Jordan*, 440 U.S. 332, 338, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979)). Draper alleges that, by enacting Wash.Rev.Code § 4.92.010–4.92.200, the State of Washington waived any immunity that it might enjoy. However, we have previously held that those provisions do not expressly and unequivocally waive Washington's eleventh amendment immunity. *McConnell v. Critchlow*, 661 F.2d 116, 117 & n. 1 (9th Cir.1981). Accordingly, we must reject Draper's argument.

### B. *Section 1983 Claims against the Washington State Troopers*

Draper's section 1983 claims allege that, by extraditing him to Washington from Or-

1. In addition to his challenges to the forcible return to Washington and the tow of his vehicle, Draper seeks damages under § 1983 against the Washington Troopers and the State of Washington on the ground that Wash.Rev.Code § 46.61.024 is so vague and overbroad that his conviction under that statute violates the due process clause of the 14th amendment.

Wash.Rev.Code § 46.61.024 (1979) states that: any driver of a motor vehicle who wilfully fails or refuses to immediately bring his vehicle to a stop in a manner indicating a wanton and wilful disregard for the lives or property of others while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony. The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving such a signal shall be in uniform and his vehicle shall be appropriately marked showing it to be an official police vehicle.

As we hold *infra*, the 11th amendment bars a suit against the State of Washington. Moreover, the state troopers enjoy immunity from a § 1983 action "insofar as their conduct does not violate clearly established ... constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (citation omitted); *see Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 3020 n. 12, 82 L.Ed.2d 139 (1984). Draper has not alleged any facts that could support a conclusion that by enforcing the ordinance in question the Troopers violated "clearly established ... constitutional rights." *See, e.g., Pierson v. Ray*, 386 U.S. 547, 555–57, 87 S.Ct. 1213, 1218–19, 18 L.Ed.2d 288 (1967). To the contrary, it is clear that they did not. Accordingly, the district court correctly granted summary judgment in favor of the Troopers on this claim.

2. The 11th amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State."

3. The State of Washington and the Washington Troopers contend that, because the 11th amendment, default, and discovery issues were not listed in Draper's notice of appeal, those issues are not properly before us. A notice of appeal need not specify the precise issues raised on appeal; rather, the notice must only specify the party appealing, the judgment being appealed, and the court to which the appeal is taken. Fed.R.App.Proc. 3(c).

egon without a hearing, Washington State Trooper Coombs and Sergeant Cook, among others, violated his federal constitutional and statutory rights, as well as his rights under state law. "The Eleventh Amendment bars a suit against state officials when 'the state is the real, substantial party in interest.'" *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) (quoting *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 359, 89 L.Ed. 389 (1945)); *see Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Demery v. Kupperman*, 735 F.2d 1139, 1146 (9th Cir.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 810, 83 L.Ed.2d 803 (1985). Although Cook and Coombs do not specifically urge that the eleventh amendment bars the claims against them, the eleventh amendment "is a limitation on federal subject-matter jurisdiction" that we are obligated to consider fully. *Demery v. Kupperman, id.* at 1149 n. 8.

 If found to have violated an individual's federal constitutional or statutory rights, a state official may be held *personally* liable for damages. *See Scheuer v. Rhodes*, 416 U.S. 232, 237–38, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974); *Demery v. Kupperman*, 735 F.2d at 1146. Here, Draper seeks only to recover damages from Trooper Coombs and Sergeant Cook *personally*. The State of Washington therefore is in no way "the real substantial party in interest." [4] Accordingly, Draper is not barred by the eleventh amendment from seeking damages under section 1983 from Cook and Coombs personally.[5]

## III. DRAPER'S SECTION 1983 CLAIM BASED ON THE EXTRADITION FROM OREGON TO WASHINGTON

Draper pleaded 42 U.S.C. § 1983 claims against the Washington State Troopers and the Portland police officers contending that they failed to follow the extradition procedures required by federal and state law. After holding that his claims were otherwise legally sufficient, the district court dismissed them on the ground that Draper's subsequent criminal conviction demonstrated that he had suffered no actual damages. We agree with the district court that Draper properly stated section 1983 claims for the law enforcement officers' failure to comply with the federal and state extradition statutes, statutes that implement a clause of the United States Constitution. We hold, however, that an absence of actual damages would not be fatal to those claims.

### A. *Section 1983 Claim for Violation of Federal Statute*

Draper bases one of his section 1983 claims on the Extradition Clause of the United States Constitution,[6] and its implementing statute, 18 U.S.C. § 3182 (1982). Section 3182 provides that

[w]henever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory,

---

**4.** State officials enjoy a qualified immunity for all conduct in their official capacity. To find Trooper Coombs and Sergeant Cook liable for damages, the district court would have to decide that their summary extradition of Draper without any legal proceedings failed to meet the objective standard announced in *Harlow v. Fitzgerald*, 457 U.S. at 818, 102 S.Ct. at 2738.

**5.** The 11th amendment does not protect local governmental bodies or local officials. *See Lincoln County v. Luning*, 133 U.S. 529, 534, 10 S.Ct. 363, 33 L.Ed. 766 (1890). Accordingly,

damage claims against Officers Goff and Garvey, and Sergeant Dick, and the City of Portland do not raise 11th amendment concerns.

**6.** Art. IV, section 2, cl. 2 provides that:
a person charged in any State with Treason, Felony or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.

charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged.

The Washington and Portland law enforcement officers do not dispute the fact that they failed to comply with the minimal procedures set forth in section 3182. Rather, the defendants argue that, for a variety of reasons, a section 1983 action cannot be based on a violation of section 3182. We disagree.

Section 1983 provides a remedy for "the deprivation of any rights, privileges, or immunities secured by the Constitution and *laws*" by a person acting under color of state law. (emphasis added). The Supreme Court has held that "laws" in section 1983 includes federal statutes and that a violation of a federal statute may, at least in some instances, serve as the basis for a section 1983 action. *See Maine v. Thiboutot,* 448 U.S. 1, 4–8, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980).

The extradition statute implements a provision of the United States Constitution. The Constitutional provision and the imple-

menting statute were "intended to enable each state to bring offenders to trial as swiftly as possible in the state where the alleged offense was committed" and "to preclude any state from becoming a sanctuary for fugitives from justice of another state." *Michigan v. Doran,* 439 U.S. 282, 287, 99 S.Ct. 530, 534, 59 L.Ed.2d 52 (1978). However, in enacting section 3182, Congress limited extradition to those circumstances in which there is reliable evidence that the suspect has been charged with a felony in the state seeking extradition. To provide some protection of the fugitive's rights, the statute prohibits a state from extraditing an individual upon the simple request of another state; rather, the extraditing state must first determine whether the petitioner has been charged with a felony in the demanding state. That determination can only be made if an officer of the extraditing state is presented with an indictment or an affidavit certified by the Governor of the demanding state. In short, although the statute was designed to allow speedy extradition, it also includes procedural safeguards that serve as "a means of ascertaining *whether the evidence is sufficient to detain and deliver the accused for trial in another state.*" *Smith v. Idaho,* 373 F.2d 149, 155 (9th Cir.), *cert. denied,* 388 U.S. 919, 87 S.Ct. 2139, 18 L.Ed.2d 1364 (1967) (emphasis added); *see Sanders v. Conine,* 506 F.2d 530, 532 (10th Cir.1974).[7]

In light of the nature and purpose of the extradition statute, we hold that a claim alleging its violation by state or local police officers states a cause of action under section 1983. In reaching that conclu-

---

7. Before extraditing a prisoner, the extraditing state must determine

first, that the person demanded is substantially charged with a crime against the laws of the State from whose justice he is alleged to have fled, by an indictment or an affidavit, certified as authentic by the governor of the State making the demand; and, second, that the person demanded is a fugitive from the justice of the State the executive authority of which makes the demand.

*Roberts v. Reilly,* 116 U.S. 80, 95, 6 S.Ct. 291, 299, 29 L.Ed. 544 (1885); *see Compton v. Ala-*

*bama,* 214 U.S. 1, 6, 29 S.Ct. 605, 606, 53 L.Ed. 885 (1909); *Hyatt v. People* ex rel. *Corkran,* 188 U.S. 691, 709, 23 S.Ct. 456, 458, 47 L.Ed. 657 (1903). In determining whether extradition is lawful, a reviewing court should consider "(a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive." *Michigan v. Doran,* 439 U.S. 282, 289, 99 S.Ct. 530, 535, 58 L.Ed.2d 521 (1978).

sion, we join with the four other circuits that have previously addressed that question. *Brown v. Nutsch,* 619 F.2d 758 (8th Cir.1980); *McBride v. Soos,* 594 F.2d 610 (7th Cir.1979); *Wirth v. Surles,* 562 F.2d 319 (4th Cir.1977), *cert. denied,* 435 U.S. 933, 98 S.Ct. 1509, 55 L.Ed.2d 531 (1978); *Sanders v. Conine,* 506 F.2d 530 (10th Cir.1974).

■ The Portland police officers also contend that, because section 3182 literally applies only to fugitives who have been formally charged in the state seeking their return, it does not apply to Draper, who had not been formally charged by Washington authorities with any offense at the time of his forcible return to that state. That argument is specious. The absence of a proper Washington charge before the transfer of Draper from custody in Oregon to custody in Washington is what underlies the violation of section 3182. It is this failure to comply with the statute that serves as a basis for the claim; it cannot serve as a shield against it.[8]

#### B. *Section 1983 Claim Based on Violation of State Law*

■ Draper alleges, *inter alia,* that the law enforcement officers failed to comply with the requirements of the Oregon Uniform Act on Fresh Pursuit, Or.Rev.Stat. §§ 133.410–133.440. Under that Act, an officer of another state who, in pursuit of a suspected felon, enters Oregon and ultimately arrests a suspect, must "without unnecessary delay take the person arrested before a magistrate of the county in which the arrest was made, who shall conduct a hearing for the purpose of determining the lawfulness of the arrest." Or.Rev.Stat. § 133.440. The Washington Troopers and the Portland police officers do not dispute the fact that they did not comply with the requirements of that statute. The district

court concluded that Draper could properly base a section 1983 claim on the violation of state law. We agree.

Unlike other state laws, the Oregon Uniform Act on Fresh Pursuit is similar to the federal extradition statute in that it is designed to implement the extradition clause of the United States Constitution. We agree with the four circuits that have held that a violation of state extradition law can serve as the basis of a section 1983 action "[w]here the violation of state law causes the deprivation of rights protected by the Constitution and statutes of the United States." *Wirth v. Surles,* 562 F.2d 319, 322 (4th Cir.1977), *cert. denied,* 435 U.S. 933, 98 S.Ct. 1509, 55 L.Ed.2d 531 (1978); *accord Brown v. Nutsch,* 619 F.2d 758 (8th Cir.1980); *McBride v. Soos,* 594 F.2d 610 (7th Cir.1979); *Sanders v. Conine,* 506 F.2d 530 (10th Cir.1974). We therefore hold that Draper has stated a section 1983 claim based on the alleged violation of the Oregon Uniform Act on Fresh Pursuit.[9]

#### C. *Damages*

■ Although the district court held that Draper properly stated section 1983 claims based on his unlawful extradition, it dismissed those claims on the ground that he was ultimately convicted of the crime involved and, therefore, suffered no "actual" damage. The district court's reasoning is simply incorrect. The Supreme Court has held that even when no actual damages are suffered as a result of a violation of section 1983, a plaintiff still may be entitled to nominal damages. *See Carey v. Piphus,* 435 U.S. 247, 266–67, 98 S.Ct. 1042, 1053–54, 55 L.Ed.2d 252 (1978). For purposes of *Piphus* it does not matter whether the underlying claim involves a deprivation of a procedural or substantive constitutionally-based right. The Tenth Circuit recently applied the *Piphus* rule in an Eighth Amendment context and expressly rejected

---

**8.** We do not consider the question whether any officers have a valid qualified immunity defense since that issue is not now before us.

**9.** Draper also contends that he was entitled to a hearing under the due process clause of the 14th amendment prior to being returned forcibly to

Washington. Because we hold that Draper was entitled to a hearing under the extradition clause and its implementing statute, we need not decide whether the due process clause also afforded him that right.

any procedural rights/substantive rights distinction as unhelpful and contrary to the underlying rationale of *Piphus*. *Lancaster v. Rodriguez*, 701 F.2d 864, 866 (10th Cir.), *cert. denied*, 462 U.S. 1136, 103 S.Ct. 3121, 77 L.Ed.2d 1373 (1983). *See also Farrar v. Cain*, 756 F.2d 1148, 1152 (5th Cir.1985) (nominal damages for violation of "civil rights"); *Smith v. Coughlin*, 748 F.2d 783, 789 (2d Cir.1984) (nominal damages for violation of Sixth Amendment rights); *Kincaid v. Rusk*, 670 F.2d 737, 746 (7th Cir.1982) (nominal damages for violation of First Amendment rights); *Familias Unidas v. Briscoe*, 619 F.2d 391, 402 (5th Cir.1980) (same). We agree with the Tenth Circuit's analysis. Even assuming that Draper did not suffer actual damages as a result of the unlawful extradition, his complaint stated valid section 1983 claims for nominal damages. Accordingly, the district court erred in dismissing those claims.

## IV. CONSTITUTIONALITY OF THE PORTLAND TOWING ORDINANCE AND THE OREGON LIEN STATUTE

Draper also raises due process challenges to City of Portland Ordinance § 16.-04.020, which authorized the towing of his automobile after his arrest but which failed to provide for *any* hearing with respect to the towing or the charges. He alleges that, because of constitutional infirmities in the ordinance, the towing constituted a taking of property without due process in violation of the fourteenth amendment and seeks damages from the City of Portland and three of its police officers.[10] The district court granted summary judgment in favor of those defendants. We reverse.

In *Stypmann v. City & County of San Francisco*, 557 F.2d 1338, 1342 (9th Cir. 1977), a case involving a challenge to the constitutionality of the San Francisco towing ordinance, we concluded that "[l]oss of the use and enjoyment of a car deprives the owner of a property interest that may be taken from him only in accordance with the Due Process Clause. Due process strictures must be met though the deprivation be temporary." (footnotes omitted). We then considered the factors identified by the Supreme Court in *Mathews v. Eldridge:*

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *see Haygood v. Younger*, 769 F.2d 1350, 1357 (9th Cir.1985) (en banc).

In applying the balancing test to the San Francisco ordinance, we stated that "[t]he private interest in the uninterrupted use of an automobile is substantial. A person's ability to make a living and his access to both the necessities and amenities of life may depend upon the availability of an automobile when needed." *Stypmann*, 557 F.2d at 1342–43 (footnote omitted). We also recognized the governmental interest involved:

> *The public interest in removing vehicles from streets and highways ... is also substantial, though differing in the various situations in which removal is authorized.* Moreover, the government has a considerable interest in imposing the cost of removal upon the vehicle owner and retaining possession of the vehicle as security for payment.

*Id.* at 1343 (emphasis added).

Because in *Stypmann* we only considered whether a post-towing hearing was required,[11] the only governmental interest

---

**10.** Draper also challenges Oregon Revised Statute § 87.152, which allowed the person towing the vehicle to establish a lien. *See infra* note 13.

**11.** In *Stypmann,* the plaintiff did not argue that due process required a pre-towing hearing, but argued that the law did not provide a hearing soon enough after the towing.

at stake was the cost of providing for a reasonably prompt hearing to challenge the tow. *Id.* After weighing the interests, we held that a San Francisco ordinance that only provided a hearing for one unable to pay towage fees and then only "within five days of the time he notifies the Traffic Fines Bureau that he intends to challenge the [action]" failed to comply with the requirements of the Due Process Clause. *Id.* at 1341.

In *Goichman v. Rheuban Motors, Inc.*, 682 F.2d 1320 (9th Cir.1982), we addressed the validity of a section of the Los Angeles Municipal Code that provided for a post-towing hearing within 48 hours of a written request by the vehicle's registered owner. Applying the *Mathews v. Eldridge* balancing test, we held that the ordinance satisfied the due process clause. *Goichman*, 682 F.2d at 1324–25.

■■■■ Both *Stypmann* and *Goichman* stand for the proposition that a post-tow hearing is required by the due process clause. The issue in dispute in those cases was: how long after the tow can a post-tow hearing be held without violating the car owner's right to due process? Here, unlike the ordinances in dispute in *Stypmann* or *Goichman*, the Portland ordinance does not provide for a hearing at all.[12] We hold that, because the Portland ordinance fails to provide for a hearing, it violates the due process clause.[13] Furthermore, we hold

that even though Draper may have suffered no actual injury, he may still be entitled to nominal damages. *See Carey v. Piphus*, 435 U.S. 247, 266–67, 98 S.Ct. 1042, 1053–54, 55 L.Ed.2d 252 (1978).[14]

## V. DRAPER'S EIGHTH AMENDMENT CLAIMS

Draper sets forth Eighth Amendment "cruel and unusual punishment" claims against Clark County, Washington, the Clark County Sheriff, the Clark County Commissioner, and other Clark County officials ("Clark County defendants"), based on the conditions in Clark County Jail where he was initially held. However, a federal district court must apply the personal jurisdiction law of the state in which it is sitting. *See Paccar International, Inc. v. Commercial Bank of Kuwait*, 757 F.2d 1058, 1061–62 & n. 2 (9th Cir.1985); *Hunt v. Erie Insurance Group*, 728 F.2d 1244, 1246 (9th Cir.1984); *Kransco Manufacturing, Inc. v. Markwitz*, 656 F.2d 1376, 1377 (9th Cir.1981); Fed.R.Civ.P. 4(e). As a district court sitting in Oregon, the district court was obligated to apply Oregon law concerning personal jurisdiction. Oregon has allowed for the exercise of personal "jurisdiction to the outer limits of due process under the Fourteenth Amendment of the United States Constitution." *State ex rel. Hydraulic Servocontrols Corp. v.*

---

**12.** The Portland ordinance provides for the towing of a vehicle when "[t]he vehicle was in the possession of a person taken into custody by a law enforcement agency." Portland Ordinance § 16.04.020(7). Because Draper was "taken into custody," his automobile was towed in accordance with the provisions of the Portland ordinance. To protect the property of an individual arrested, towing, pursuant to a valid ordinance, is proper in these circumstances. *See Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 678, 94 S.Ct. 2080, 2089, 40 L.Ed.2d 452 (1974); *United States v. Staller*, 616 F.2d 1284, 1289–90 (5th Cir.), *cert. denied*, 449 U.S. 869, 101 S.Ct. 207, 66 L.Ed.2d 89 (1980); *United States v. Hall*, 565 F.2d 917, 921 (5th Cir.1978); *Goichman*, 682 F.2d at 1323; *Stypmann*, 557 F.2d at 1342 & n. 10.

Draper does not allege that, at the time of his arrest, any of the passengers in his automobile offered to take possession of it and could law-

fully have done so. We need not consider whether, if a passenger could have taken possession of the automobile, the towing would have been justified.

Draper also claims that, because his car was parked on private property, there was no need to tow it. We see no justification for distinguishing between situations in which the automobile is on private or on public property. In fact, because of the burden on private property owners, there may be a stronger argument for the towing if the automobile has been parked on private property.

**13.** As the ordinance authorizing the towing is unconstitutional, imposition of the lien was improper. We need not reach the constitutionality of the Oregon lien statute.

**14.** The defendants may of course assert any lawful defense they may possess to this claim.

*Dale,* 294 Or. 381, 384, 657 P.2d 211, 212 (1982).[15]

■ The constitutional requirements for the exercise of personal jurisdiction are satisfied if defendants (1) have the "substantial" or "continuous or systematic" contacts with the forum state necessary for the exercise of "general jurisdiction" over them; or (2) have "avail[ed themselves] of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of [the forum state's] laws," necessary for the exercise of "limited jurisdiction." *Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1330–31 (9th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2143, 85 L.Ed.2d 500 (1985); *International Shoe Co. v. Washington,* 326 U.S. 310, 317–20, 66 S.Ct. 154, 158–60, 90 L.Ed. 95 (1945); *see Pacific Atlantic Trading Co. v. M/V Main Express,* 758 F.2d 1325, 1327 (9th Cir.1985); *Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280, 1287 (9th Cir. 1977). The Clark County, Washington, defendants do not have the contacts with Oregon necessary for the district court to lawfully exercise personal jurisdiction over them. Accordingly, the district court for the District of Oregon could not constitutionally exercise personal jurisdiction over the Clark County defendants and properly dismissed the claims against them.[16]

## VI. THE DISTRICT COURT'S DENIAL OF DRAPER'S MOTIONS TO COMPEL DISCOVERY AND FOR A DEFAULT JUDGMENT

### A. *Denial of the Motion to Compel Discovery*

■ The district court denied Draper's motion to compel answers to interrogatories and for sanctions under Federal Rule of Civil Procedure 37. On appeal, Draper contends that "[t]his is an absolute denial of discovery." We disagree.

Draper's interrogatories to the City of Portland and Officers Garvey, Goff, and Dick were filed long after the deadline that the district court set for the end of discovery. Draper apparently never filed a motion for an extension of time. Furthermore, when finally served on the defendants, the interrogatories did not comply with the local rules. We recognize that the plaintiff represented himself and therefore, in evaluating his compliance with the technical rules of civil procedure, we treat him with great leniency. *Cf. Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1971); *Pembrook v. Wilson,* 370 F.2d 37, 39–40 (9th Cir.1966). Even so, we cannot hold that in this case the district court abused its discretion when it denied Drapers' motion to compel discovery. *Cf. National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 642–43, 96 S.Ct. 2778, 2780–81, 49 L.Ed.2d 747 (1976) (per curiam); *Bollow v. Federal Reserve Bank of San Francisco,* 650 F.2d 1093 (9th Cir.1981), *cert. denied,* 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982).

### B. *Denial of the Motion for a Default Judgment*

■ The district court also denied Draper's motions for a default judgment under Federal Rule of Civil Procedure 55 against Washington Troopers Cook and Coombs, and Portland Police Officer Dick. The motions for default were based on an alleged failure to file an answer to Draper's complaint. However, the State of Washington in its answer responded on behalf of Troopers Cook and Coombs. In addition, although it appears to have been late, Sergeant Dick submitted an answer on the same day as Draper filed the motion for a default judgment. Draper has not made any showing of prejudice as a result of Dick's failure to comply strictly with the

---

**15.** Or.R.Civ.P. 4 L provides for the exercise of personal jurisdiction "where prosecution of the action against a defendant is not inconsistent with the Constitution of this state or the Constitution of the United States."

**16.** Draper also claims that while incarcerated in Washington he was denied meaningful access to

the courts and was subjected to cruel and unusual punishment. Draper named only the State of Washington as a defendant in these claims. As we have held, *supra,* the eleventh amendment bars Draper's claims against the State.

time requirements of the Federal Rules of Civil Procedure. We therefore cannot conclude that the district court abused its discretion in denying the motions for a default judgment. *See Aldabe v. Aldabe,* 616 F.2d 1089, 1092–93 (9th Cir.1980); *Lau Ah Yew v. Dulles,* 236 F.2d 415, 416 (9th Cir.1956).

### VII. CONCLUSION

We hold that Draper properly stated claims under 42 U.S.C. § 1983 for failure to comply with the extradition statutes and for the towing of his automobile pursuant to an unconstitutional municipal ordinance. We further hold that the absence of actual damages would not require dismissal of those claims. We affirm however, on Eleventh Amendment grounds, the district court's dismissal of the extradition claims against the State of Washington. We also affirm its dismissal, for lack of personal jurisdiction, of Draper's claims regarding his treatment in the Washington State Penitentiary and Clark County jail. Finally, we affirm the district court's ruling regarding discovery and its refusal to enter a default judgment in favor of Draper.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION.